# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00335-CV

**John H. Thomas, M.D., Appellant**

**v.**

**Graham Mortgage Corporation and Christopher Norris, Substitute Trustee, Appellees**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT NO. 36424, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## O P I N I O N

The suit underlying this appeal concerns the nonjudicial foreclosure of certain ranch property located in Burnet and Llano Counties ("the Property"). Prior to the foreclosure, the Property was owned by appellant John H. Thomas, M.D. Asserting various claims, Thomas contends that the foreclosure by Graham Mortgage Corporation ("the Bank") and Christopher Norris, substitute trustee, (collectively, "the Bank Defendants") was wrongful because the Property is his homestead and thus exempt from forced sale. *See* Tex. Const. art. XVI, § 50. The Bank Defendants moved for summary judgment on all of Thomas's claims and argued that, as a matter of law, Thomas cannot establish that the Property was his homestead when he executed a loan secured by the Property.

Thomas appeals from the trial court's grant of summary judgment in favor of the Bank Defendants. Thomas also appeals from the trial court's orders striking his amended motion for summary judgment, striking his motion for an appraisal, and denying his motion for continuance.

We will affirm the orders striking Thomas's amended motion and denying his motion for continuance. We will reverse the trial court's order striking Thomas's motion for appraisal. Consequently, we will affirm the trial court's summary judgment in part, and we will reverse and remand in part.

## BACKGROUND

On August 14, 2007, Thomas entered into a written loan agreement with the Bank, borrowing 3.4 million dollars. The loan agreement signed by Thomas included, as security on the loan, a deed of trust covering 618 acres of the Property.

A few weeks before closing on the loan, a proposed title insurance policy identified 200 acres of the Property as Thomas's homestead. The identification was based on a homestead designation filed by Thomas in 2005, and upon learning of the problem, Thomas sent an e-mail to the Bank loan officer, Dean Castelhano, regarding the issue. In his June 2007 e-mail, Thomas stated that the title insurance policy's homestead exception "was unexpected as the attorney with whom [he] spoke advised this could be avoided." Thomas also proposed three options for addressing the issue: (1) a loan for $2.5 million with the Property reduced by 200 acres, (2) "proceed as planned with the [proposed loan for $3.7 million ] and reduced collateral," or (3) "no deal." According to Castelhano, his initial reaction to the discovery of the 2005 homestead designation was not to make the loan, but he decided to proceed after Thomas argued that the Property was not his homestead. Conversely, Thomas contends that he never had any discussions with any representative from the Bank about the homestead character of the Property, aside from his June 2007 e-mail.

2

In any event, in closing on the loan, Thomas signed a documented entitled "Non-Homestead Affidavit and Contingent Designation of Homestead." In this document, Thomas declared under oath:

1. "That he has never occupied the dwelling house located on the [Property] for residence purposes, but has instead allowed such dwelling house at all time to be utilized by a ranch foreman in his employ."

2. "That he has no present intent to occupy such dwelling house, or any other dwelling house to be constructed on the [Property] as his residence in the future."

3. "That he does not now claim either a business or residence homestead in the [Property] and hereby renounces and disclaims any homestead right interest or exemption in the property."

Thomas also swore and acknowledged that the affidavit and contingent designation was "made to induce Graham Mortgage Corporation to fund a mortgage loan secured by a Deed of Trust on the [Property]."[1]

According to the Bank, by May 2009, Thomas had defaulted on his obligations under the agreement by failing to make payments. Consequently, the Bank sought to foreclose on its security interest and eventually posted the Property for sale. However, before the foreclosure sale could be conducted, Thomas sued the Bank Defendants, claiming that he had been fraudulently

---

[1] Thomas also declared the following: "That, contingently, to the extent and only to the extent that the above renunciation and disclaimer is ineffective by his current use of the property for grazing cattle owned by him, or any other reason, he designates the portion of the property . . . consisting of 100 acres as described in Exhibit B as attached hereto as the portion of such property to which he and/or his family is entitled under the constitution and laws of the State of Texas as a homestead . . . ."

3

induced into the loan agreement. Thomas also sought a temporary restraining order and temporary injunction to prevent the sale of the Property pending suit, both of which the trial court granted.

In July 2009, Thomas amended his petition, alleging for the first time that 200 acres of the Property had been designated and continually maintained as his homestead. Based on these new allegations, Thomas omitted his claim for fraudulent inducement and instead claimed that as a result of the Property's homestead status, the Bank Defendants had violated the Texas Constitution, home equity lending laws, and the Texas Debt Collection Act. *See* Tex. Const. art. XVI, § 50; Tex. Fin. Code Ann. §§ 392.001-.404 (West 2006) (debt collection act). In addition to monetary relief, Thomas sought declarations that (1) the lien held by the Bank was void, (2) the Bank had forfeited the entire note on the Property, and (3) the Bank was in violation of the Texas Debt Collection Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-37.009 (West 2008) (uniform declaratory judgment act). That same month, the Bank filed a counterclaim against Thomas for breach of contract.

In August 2009, following a hearing on the Bank Defendants' motion to reconsider temporary injunction, the trial court dissolved the temporary injunction prohibiting foreclosure on the Property. The next month, the Bank foreclosed on its security interest in the Property.[2]

In December 2010, Thomas filed a motion for summary judgment on all of his claims. In February 2011, the Bank amended its counterclaim against Thomas and, after applying

---

[2] In response to the allegations in Thomas's amended petition regarding the homestead status of the Property, and in an effort to avoid coming within the Texas Constitution's home equity lending provisions, the Bank sent a letter to Thomas modifying the loan agreement. Specifically, the Bank credited Thomas with $1,000 toward the amounts due under the note and informed Thomas that the note would no longer be secured by the 100 acres that Thomas had conditionally designated as his homestead in the non-homestead affidavit. The eventual foreclosure did not include these 100 acres.

4

the proceeds from the foreclosure sale to the balance on the loan, sought to recover the remaining deficiency on the loan balance. The Bank Defendants also filed their own motion for summary judgment, seeking a declaration that the Property was not a homestead, recovery of the deficiency, attorney's fees, and dismissal of all of Thomas's claims. Both summary-judgment motions were set for hearing on April 21, 2012.

Ten days before the summary-judgment hearing, Thomas filed a first amended motion for summary judgment, to which the Bank Defendants filed a written objection on the ground that the amended motion was untimely. Two days before the hearing on the summary-judgment motions, Thomas filed an answer to the Bank's counterclaim and, in the alternative, a motion for an appraisal. In response, the Bank Defendants filed a motion to strike Thomas's motion for appraisal. One day before the hearing, Thomas filed a motion for continuance of the hearing.

On the day of the hearing, the parties appeared, and the trial court denied Thomas's motion for continuance. Following a hearing on the remaining motions, the trial court granted the Bank Defendants' motion to strike Thomas's motion for appraisal and the Bank Defendants' objection to Thomas's amended motion for summary judgment. Finally, the trial court denied Thomas's original motion for summary judgment and granted summary judgment in the Bank Defendants' favor, declaring that none of the Property was Thomas's "homestead property as of August 14, 2007."[3] Consistent with its orders, the trial court subsequently signed a final judgment

---

[3] The trial court also sustained the Bank Defendants' objections to summary-judgment evidence filed by Thomas, in connection with both his own motion for summary judgment and in response to the Bank Defendants' motion for summary judgment. In this appeal, Thomas does not challenge these rulings or the trial court's denial of his motion for summary judgment.

5

in favor of the Bank Defendants, ordering that Thomas take nothing on his claims and awarding the Bank $1,434,999.28, plus postjudgment interest and attorney's fees.

Thomas now raises seven issues on appeal. In these issues, Thomas argues that the trial court erred in granting summary judgment in favor of the Bank Defendants. In addition, Thomas argues that the trial court abused its discretion in denying his motion for continuance, striking his amended motion for summary judgment, and striking his motion for appraisal.

## DISCUSSION

### Summary judgment on Thomas's claims for affirmative relief

*Standard of review*

In his first and fifth issues on appeal, Thomas asserts that the trial court erred in granting the Bank Defendants' motion for summary judgment with respect to his claims for affirmative relief. Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant is entitled to traditional summary judgment if (1) there are no genuine issues as to any material fact and (2) the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). To obtain traditional summary judgment on an opposing party's claims, the movant must conclusively negate at least one element of each of the claims or conclusively establish each element of an affirmative defense. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

On appeal, we review the evidence presented in the motion and the response in the light most favorable to the party against whom the summary judgment was rendered,

6

crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Where, as here, the motion for summary judgment asserts multiple grounds and the summary judgment order does not specify a ground for the ruling, we will affirm the summary judgment if any ground presented in the motion is meritorious. *See Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.).

In this case, the Bank Defendants moved for traditional summary judgment on all of Thomas's claims, each of which requires Thomas to prove that at least a portion of the Property securing the loan agreement was his homestead at the time the loan agreement was executed. In their summary-judgment motion, the Bank Defendants asserted that, as a matter of law, Thomas cannot prove the homestead status of the Property. In response, Thomas argued that (1) there are material issues of fact regarding the Property's homestead status that preclude summary judgment and (2) the Bank has previously taken the position that the Property is Thomas's homestead and therefore is now estopped from claiming otherwise.

*Homestead status of the property*

In deciding whether the trial court erred in granting summary judgment on Thomas's claims, we first consider whether a genuine issue as to any material fact exists with respect to the homestead status of the Property. Homestead properties are afforded special and unique protections under the Texas Constitution. *See* Tex. Const. art. XVI, § 50. Relevant to this appeal, Texas homesteads are generally exempt from "forced sale, for the payments of all debts," except for those debts specifically enumerated in the constitution. *See id*. When a lien that is not constitutionally

7

permitted is placed on homestead property, the lien on the property is void. *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129-30 (Tex. 1991). Because constitutional homestead rights protect citizens from losing their home, courts liberally construe constitutional and statutory homestead provisions to protect the homestead. *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 807 (Tex. App.—Austin 2004, pet. denied). To establish a piece of property as homestead property "the claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." *Sims v. Beeson*, 545 S.W.2d 262, 263 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.). Once property is designated as homestead property, it can lose that character only through abandonment, death, or alienation. *Majeski v. Estate of Majeski*, 163 S.W.3d 102, 107 (Tex. App.—Austin 2005, no pet.).

One of the grounds upon which the Bank Defendants moved for summary judgment was abandonment. Specifically, the Bank Defendants argued that, to the extent the Property was ever Thomas's homestead property, the undisputed evidence conclusively establishes that Thomas had abandoned the Property as a homestead at the time the loan agreement was executed and the deed-of-trust lien was acquired. *See Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987) (explaining that "when the property has not become a homestead at the execution of the mortgage, deed of trust or other lien, the homestead protections have no application even if the property later becomes a homestead"). Similarly, the Bank Defendants argued that Thomas is estopped from claiming the Property as his homestead as a result of the contrary declarations by Thomas in his "Non-Homestead Affidavit and Contingent Designation of Homestead."

A property owner does not necessarily abandon homestead property by changing residence. *Rancho Oil Co. v. Powell*, 175 S.W.2d 960, 963 (1943) ("The acquiring of a new home

8

is not always the acquiring of a new homestead, and one does not necessarily abandon a homestead merely by moving his home."). Even the temporary renting of the homestead does not change the homestead character of the property, when no other homestead has been established. *Id*. Rather, evidence establishing abandonment of a homestead "must be undeniably clear" and show "beyond almost the shadow, at least of all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption." *Id*. That is, it must be clear that there has been a discontinuance of the use of the property coupled with an intention not to use it as a homestead again. *See Kendall Builders*, 149 S.W.3d at 808.

Though a change of residence does not necessarily equate to abandonment, a change in residence coupled with a disclaimer of the homestead may form the basis of a claim of abandonment by estoppel. Estoppel is a doctrine recognized and applied in a variety of contexts, but generally prevents a party from asserting rights, claims, and matters of fact that are inconsistent with those previously asserted by the party. *See, e.g.*, *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) ("The doctrine of judicial estoppel 'precludes a party from adopting a position inconsistent with one successfully maintained in an earlier proceeding.'"(quoting 2 Roy W. McDonald & Elaine G. Carlson, *Texas Civil Practice* § 951 at 576 (2d ed. 2003))); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (explaining that affirmative defense of quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position he or she has previously taken"). Applying estoppel principles in the context of homestead disclaimers, Texas courts have sought to balance the importance of constitutional homestead protection with "policy considerations which abhor the perpetration of fraud on creditors." *See First Interstate Bank of Bedford v. Bland*, 810 S.W.2d 277, 284-85

9

(Tex. App.—Fort Worth 1991, no writ). As a result, it is well established that when physical facts open to observation lead to a conclusion that the property is not the homestead of the mortgagor, and its use is not inconsistent with the declarations made that the property is disclaimed as a homestead, and these declarations were intended to be and were actually relied upon by the lender, then the owner is estopped from asserting a homestead claim. *Bland*, 810 S.W.2d at 284-85; *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940, 945 (Tex. App.—Corpus Christi 1988, writ denied); *Prince v. North State Bank of Amarillo*, 484 S.W.2d 405, 411 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.). On the other hand, if the circumstances are such that a lender should have known or suspected that a homestead disclaimer is false—such as or when a property owner is in actual possession of a piece of property, occupying and using the property—then courts will not enforce the disclaimer against the debtor. *See Bland*, 810 S.W.2d at 287 (holding that facts did not support estoppel because record indicated that claimant was occupying and using homestead when he executed disclaimer); *Prince*, 484 S.W.2d at 405 (noting that the "determining factor is whether the claimant's acts were such as to put a reasonable person on notice that the tract constituted part of the homestead").

In support of its motion for summary judgment, the Bank Defendants attached the affidavit of Dean Castelhano, vice president of the Bank and loan officer for the Thomas loan. Castelhano averred that during their initial conversation, Thomas informed Castelhano that he was a doctor in Van Horn, that the Property was currently for sale, and that he wanted to borrow against the Property so that he could buy a ranch in New Mexico. Further, Castelhano explained in his affidavit that he had conducted a visual inspection of the Property with Thomas's real estate agent

10

in the month before the closing. Castlehano stated that during this inspection, he did not observe any dwellings or living structures on the subject property except a cabin and that the real estate agent told Castelhano that "employees who worked on the [P]roperty lived there and, for that reason, [he] could not inspect it." The agent also informed Castelhano that "Dr. Thomas had not lived on the [Property]."

Thomas has not directly disputed any of these underlying facts, including Castelhano's visual inspection or conversations with the real estate agent. Instead, in his affidavit submitted with his response to the Bank Defendants' summary-judgment motion, Thomas averred additional underlying facts that he contends preclude summary judgment in favor of the Bank Defendants. For example, according to Thomas, he acquired the Property in 1996 and resided on it full-time in a travel trailer from 1996 to 2002 and again from 2004 to 2006. In addition, in 2006 Thomas completed construction of a three-bedroom cabin on the Property, which has been occupied by the Property's caretaker.[4] In his affidavit, Thomas admits that when the loan agreement was executed he was working and renting a house in Van Horn; however, he asserts that he never intended to abandon the Property as his homestead. And although the Property was for sale at the time of the loan agreement, Thomas points out that he continued to make regular visits to the Property, making improvements on it and using it for grazing cattle, sheep, and horses. Finally, Thomas contends that (1) he designated the Property as his homestead in 1996, 2001, and 2005 and since then has never designated any

_____

[4] Thomas also contends that the caretaker is his fiancé. Thomas did not aver that he has ever resided in the cabin.

other Property as a homestead, and (2) the Property remains his homestead even today. Thomas asserts that this evidence, at the very least, creates material issues of fact regarding the Property's homestead status.

The facts and issues in this case are similar to those presented to the Texas Supreme Court in *Alexander v. Wilson*, 77 S.W.2d 873 (Tex. 1935). In that case, the Wilsons had lived on a rural tract of land as their home for several years before moving to a property owned by their son. *Id*. at 874. After the move, the Wilsons continued to own the rural property and used it for farming and livestock. Two years later, the Wilsons executed a note and secured the note with a mortgage on the property. The mortgage document signed by the Wilsons contained a recitation that the rural property was not their homestead. *Id*. However, when the lenders sought to foreclose, the Wilsons claimed that the rural property was protected as their homestead. *Id*. The trial court disagreed, granting a directed verdict in favor of the lender on the ground that the Wilsons were estopped by the recitation from asserting their homestead claim. *Id*. The supreme court upheld the ruling, explaining:

> The particular point to be considered is whether the mortgagee had the right to rely on the declaration, in making the loan and taking the mortgage. He had such right, unless the visible circumstances existing at the time, were of such import as to apprise him of the fact that the farm was the home of the mortgagors. That the circumstances were deficient in this respect, is plain. The mortgagors resided in town. The use being made of the farm was not appurtenant to their residence there.
>
> . . .
>
> Even if known to the mortgagee in the instant case, the circumstances that the place in town did not belong to the mortgagors, would not prevent an estoppel from arising against them. This circumstance, too, was consistent with an abandonment of the home on the farm.

*Id*.

12

Here, the pertinent undisputed facts—the information conveyed to Castelhano by Thomas during their initial conversation before the loan, along with Castelhano's visual observations of the Property—lead to the conclusion that Thomas was not occupying the premises as his home at the time the loan was made. Although Thomas asserts that he continued to use the Property for agricultural purposes after moving to Van Horn, including at the time of the loan agreement, this use is not inconsistent with an abandonment of the homestead. *See id*. ("Where homestead claimants reside in a city or town, the law does not regard a use of rural land as being a use for the purposes of a home."). Similarly, the fact that the Property may have been previously used and designated by Thomas as his homestead, even if made known to the Bank, is not necessarily inconsistent with a subsequent abandonment. Under these circumstances, the Bank was justified in relying on Thomas's representation that he was disclaiming any constitutional homestead rights in the Property. Upon review of the record, we conclude that Thomas is estopped from denying the truth of his homestead disclaimer. Consequently, we also conclude that the evidence conclusively establishes that Thomas abandoned any homestead rights in the Property at the time of the loan agreement.

*Thomas's estoppel claim*

Next, we examine whether the trial court erred in granting summary judgment on Thomas's claims because the Bank is estopped from asserting that the Property was not Thomas's homestead or that Thomas abandoned his homestead rights. In response to the Bank Defendants' motion for summary judgment, Thomas argued that the Bank had previously recognized that the Property was his homestead property when it implemented Thomas's contingent homestead

13

designation and released 100 acres of the Property as security on the note. Because the Bank's decision to release the 100 acres is not inconsistent with its position that Thomas did not have any homestead rights in the property at the time the loan agreement was executed, we disagree.

As previously discussed, estoppel generally prevents a party from asserting rights, claims, and matters of fact that are inconsistent with those previously asserted by the party. *See, e.g.*, *Pleasant Glade Assembly of God*, 264 S.W.3d at 6 (judicial estoppel); *Lopez*, 22 S.W.3d at 864 (quasi-estoppel). In this case, the Bank has never taken the position that the Property was Thomas's homestead at the time the loan agreement was executed. In fact, the record establishes that the Bank released the 100 acres in order to avoid liability *in the event* the Property is ultimately determined to be homestead property. The Bank's release of the 100 acres is not inconsistent with its position that the Property was not Thomas's homestead at the time the loan agreement was executed. Instead, the action represents an alternative defensive position in response to Thomas's claim that the Bank had violated home equity provisions of the Texas Constitution.

The summary-judgment record conclusively establishes that, when the loan agreement was executed, Thomas abandoned any homestead rights he had in the Property. Further, there is nothing in the record supporting Thomas's claim that the Bank Defendants are estopped from asserting that Thomas abandoned his homestead rights. Accordingly, we conclude that the trial court did not err in granting the Bank Defendants' motion for summary judgment on Thomas's claims for affirmative relief. Thomas's first issue on appeal, to the extent he complains of the trial court's grant of summary judgment on his claims, and fifth issue on appeal are overruled.

14

**Summary judgment on the Bank's deficiency claim and Thomas's request for an appraisal under section 51.003 of the Texas Property Code**

In his first and fourth issues on appeal, Thomas complains that the trial court erred in denying him an appraisal of the Property and in granting summary judgment on the Bank's deficiency claim. A claim for deficiency arises when real property is sold at foreclosure for a price that is less than the unpaid balance of indebtedness secured by the real property. *See* Tex. Prop. Code Ann. § 51.003(a) (West 2007). When a deficiency claim is pursued by a lender, section 51.003 of the Texas Property Code provides that the borrower may request that "the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale." *Id*. § 51.003(b). If the court determines that the fair market value is greater than the price paid at the foreclosure sale, the borrower is "entitled to an offset against the deficiency amount in the amount by which the fair market value . . . exceeds the sale price." *Id*. § 51.003(c). If a request to determine fair market value is not made, or if no competent evidence of fair market value is introduced, the foreclosure sale price is used to compute the deficiency amount. *Id*.

A request for an offset against a deficiency claim under section 51.003 is an affirmative defense that must be pleaded. *Cabot Capital Corp. v. USDR, Inc.*, 346 S.W.3d 634, 639 (Tex. App.—El Paso 2009, pet. denied) (section 51.003 offset is affirmative defense). This pleading requirement, however, is met when the offset is requested by motion. *Winfield v. Dosohs I, Ltd.*, No. 01-97-00997-CV, 1998 WL 436895, *4 (Tex. App.—Houston [1st Dist.] July 30, 1998, no pet.) (mem. op., not designated for publication) (noting that it considered motion for appraisal under section 51.003 of property code to be part of defendant's answer). Accordingly, for an offset defense under section 51.003 to be considered in response to a motion for summary judgment on a deficiency

claim, the request must be on file at the time of the summary-judgment hearing. *See* Tex. R. Civ. P. 166a(c). In addition, the timeliness of a request for an offset under section 51.003 is governed by rule 63 of the Texas Rules of Civil Procedure. *Id.*, 1998 WL 436895, at *4.

Rule 63 provides that parties may amend their pleadings "provided, that any pleadings, responses, or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under rule 166, shall be filed only after leave of the judge is obtained." Tex. R. Civ. P. 63. A summary-judgment proceeding is a trial within the meaning of rule 63; thus, a party must seek leave of court before filing an amended pleading within seven days of a summary-judgment hearing. *See IKB Indus. (Nigeria), Ltd. v Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997). The trial court, however, must grant leave to amend "unless there is a showing that such filing will operate as a surprise to the opposite party." Tex. R. Civ. P. 63. The burden to show surprise or prejudice is on the party resisting the amendment. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939-40 (Tex. 1990). This required showing may be (1) made by presenting evidence of surprise or prejudice or (2) based on the trial court's conclusion that the amendment on its face is calculated to surprise or prejudice. *See id.* at 940; *Hardin v. Hardin*, 597 S.W.2d 347, 350-51 (Tex. 1980). An amendment adding a new cause of action or defense operates as a surprise and is prejudicial on its face if it (1) reshapes the nature of the case, (2) could not have been anticipated, and (3) prejudices the plaintiff's presentation of the case. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 186 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

The Bank foreclosed on the Property, pleaded a deficiency counterclaim against Thomas, and subsequently moved for summary judgment on its claim. Two days before the

summary-judgment hearing, Thomas filed an answer to the Bank's counterclaim for deficiency and alternative motion for appraisal, requesting an appraisal and offset under section 51.003 of the property code. In support of his motion for appraisal, Thomas asserted that (1) a month before execution of the loan agreement in 2007, the Property had been appraised at more than $6 million, far in excess of the amount of the loan, and (2) the Bank purchased the Property at the foreclosure sale in 2009 for approximately $2.2 million. There is no document in the record indicating that Thomas requested or obtained leave of court before filing his amended answer and alternative motion. However, the Bank Defendants moved to strike the motion for appraisal on the ground that it operated as an unfair surprise under rule 63, and the court granted the motion to strike by written order. Thus, it is clear from the record that the trial court was made aware of Thomas's amended pleading and expressly refused to consider it as part of the summary-judgment record. *Cf. Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 490-91 (Tex. 1988) (presuming, in absence of contrary evidence, that amended pleading filed four days before summary-judgment hearing was before the court, even though record did not show that leave was requested). We review the trial court's decision to strike Thomas's motion for appraisal for an abuse of discretion. *See State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994) ("If the trial amendment is not mandatory, then the decision to permit the amendment rests within the sound discretion of the trial court."); *Perez v. Embree Constr. Group, Inc.*, 228 S.W.3d 875, 88-83 (Tex. App.—Austin 2007, pet. denied).

The Bank Defendants argue that the trial court did not abuse its discretion in striking Thomas's motion for appraisal solely because the pleading is prejudicial on its face. The Bank Defendants presented no evidence of surprise or prejudice with regard to their motion to strike, and we find that no such evidence appears in the record. Although the Bank foreclosed on the

Property in September 2009, it waited until February 2011 to amend its pleadings to assert its deficiency counterclaim. Three days after asserting its deficiency claim, the Bank Defendants moved for summary judgment on the claim, and less than two months later, Thomas amended his pleadings and requested an offset under section 53.001. Under these circumstances, we cannot conclude that surprise or prejudice is apparent on the face of the pleadings, given that the Bank could have anticipated that Thomas would assert a section 53.001 offset defense. *See Hardin*, 597 S.W.2d at 350 (concluding that amendment was prejudicial on its face where "[the] amendments could not have been anticipated by the plaintiff, and had they been permitted, they would have prejudiced the plaintiff's presentation of the case and resulted in unnecessary delay").

Based on the record before us, including the lack of evidence of surprise or prejudice to the Bank, we conclude that the trial court abused its discretion in striking Thomas's motion for appraisal. *See Greenhalgh*, 787 S.W.2d at 939 (noting that trial court has no discretion to refuse amendment under rule 63 unless (1) opposing party presents evidence of surprise or prejudice or (2) amendment is prejudicial on its face). As a result, the trial court erred by granting summary judgment on the Bank's deficiency claim based solely upon evidence of the Property's foreclosure sale price. Thomas's first issue on appeal, to the extent he complains of the trial court's grant of summary judgment on the Bank's deficiency claim and related attorney's fees, and fourth issue on appeal are sustained.

**Thomas's amended motion for summary judgment**

In his second, third, and sixth issues on appeal, Thomas complains of the trial court's refusal to consider his amended motion for summary judgment. In that amended motion, Thomas

18

added estoppel as a ground for summary judgment in his favor. That is, Thomas argued that summary judgment should be granted in his favor because the Bank is estopped from arguing that the Property is not his homestead or that it has been abandoned. As previously discussed, Thomas's estoppel claim fails as a matter of law. In addition, rule 166a of the Texas Rules of Civil Procedure requires that a nonmovant receive at least twenty-one days' notice of each motion for summary judgment. *See* Tex. R. Civ. P. 166a. Thus, Thomas's amended motion for summary judgment, filed ten days before the summary-judgment hearing, was untimely. The trial court properly sustained the Bank Defendants' objection to Thomas's amended motion for summary judgment and correctly declined to consider the amended motion for purposes of the April 21 hearing. We overrule Thomas's second, third, and sixth issues on appeal.

**Thomas's claim of "fraud on the court"**

Finally, in his seventh issue on appeal, Thomas asserts that the Bank Defendants' actions amount to a "fraud on the court." Thomas contends that the Bank Defendants violated multiple rules of procedure and that the trial court (1) "allowed objection and new evidence in violation of the rules of procedure," (2) "denied Thomas's motion for continuance despite a clear indication in the interest of justice for a continuance," (3) "denied Thomas the privilege of oral argument in support of his motion for summary judgment," (4) "curtailed Thomas's argument against [the Bank Defendants'] motion for summary judgment," (5) "overlooked the clear standard for denying a summary judgment motion," and (6) "denied Thomas's statutory right to an appraisal of the property at the time of taking." Thomas argues, in essence, that the trial court's erroneous legal

19

rulings on these matters establish that the court was biased against him, and therefore, he was "unable to obtain a fair and impartial hearing."

Before determining whether the record establishes that Thomas did not obtain a fair and impartial hearing, generally, we first consider Thomas's specific argument that the trial court erred in denying his motion for continuance of the summary-judgment hearing. In his motion, Thomas argued that a continuance of the hearing was necessary because he had recently received "36 pages of new information and evidence" in response to his motion for summary judgment and the various objections presented by the Bank Defendants. Thomas contended that he was "in the process of hiring new legal counsel to represent him" and had "not had time to research the information and adequately represent himself." A decision on a motion for continuance lies within the discretion of the trial court, and an appellate court will not disturb a trial court's denial of a motion for continuance unless the record reveals a clear abuse of discretion. *BMC Software Belg. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002).

Based on the record before us, including (1) the fact that no additional discovery was requested by Thomas, (2) the amount of time that the case had been on file, and (3) the amount of time that the summary-judgment motion had been on file, we cannot conclude that the trial court abused its discretion in denying Thomas's motion for continuance. *See Perotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (factors for deciding whether trial court abused its discretion in denying motion for continuance); *Green v. Cook*, No. 02-08-00087-CV, 2009 WL 279384, *17-18 (Tex. App.—Fort Worth Feb. 5, 2009, no pet.) (mem. op.) (court reviewing ruling on motion for continuance considers "nature and complexity of the case, the nature of the evidence required to address the motion, how long the motion has been on file, and if

20

the absence of counsel is an issue, whether the absence is the fault of the continuance-requesting party"). Similarly, we cannot conclude that the trial court's refusal to allow Thomas to orally argue his motion for summary judgment or to present additional argument in response to the Bank Defendants' summary-judgment motion represents an abuse of discretion. *See Long v. Yurrick*, 319 S.W.3d 944, 948 (Tex. App.—Austin 2010, no pet.) (citing *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam)) ("Due process does not require an oral hearing on a motion for summary judgment, but notice of hearing or submission of the motion is required.").

Finally, we examine whether the record as a whole demonstrates that Thomas did not receive a fair trial as a result of judicial bias. The United States Supreme Court has determined that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). To the extent Thomas complains of judicial rulings, we have separately considered the merits of each argument that Thomas has adequately briefed and have concluded that the rulings are not in error or an abuse of discretion.[5] Aside from judicial rulings, Thomas points to nothing in the record as evidence of bias against him. *See id*. (recognizing that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge"). In any event, we have reviewed the record and conclude that there is no evidence of judicial bias. Thomas's seventh issue on appeal is overruled.

---

[5] Thomas does not present any argument, authorities, or citation to the record in support of his contention that the trial court "allowed objection and new evidence in violation of the rules of procedure." Accordingly, we conclude that this argument is waived as inadequately briefed. *See* Tex. R. App. P. 38.1(I) (appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record).

21

## CONCLUSION

Having sustained Thomas's fourth issue on appeal and, in part, his first issue on appeal, we reverse the trial court's summary judgment with respect to the Bank's claims for a deficiency judgment and for attorney's fees, and we remand those portions of the cause to the trial court for further proceedings consistent with this opinion. We affirm the remainder of the trial court's summary judgment.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin and Field

Affirmed in Part, Reversed and Remanded in Part

Filed: April 4, 2013