**AFFIRMED; Opinion Filed August 14, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01115-CV

## DAVID S. BAGWELL, INDIVIDUALLY AND AS TRUSTEE OF THE DAVID S. BAGWELL TRUST, MARILYN D. GARNER, CHAPTER 7 TRUSTEE FOR THE DAVID BAGWELL COMPANY, AND EVERMORE COMMUNITIES, LTD., Appellants
## V.
## RIDGE AT ALTA VISTA INVESTMENTS I, LLC, Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-04398-E**

## OPINION
Before Justices Moseley, O'Neill, and FitzGerald
Opinion by Justice Moseley

Appellants guaranteed three promissory notes payable to appellee's predecessor-in-interest. Each note was secured by a deed of trust on a (separate) tract of land. Appellee sued appellants on the guaranty agreements and obtained a partial summary judgment as to liability. After acquiring the properties securing the notes at separate sales, appellee obtained a summary judgment on the sole remaining issue—damages. Appellants[1] assert six issues on appeal. They argue the trial court erred by refusing to allow them to amend their pleadings to assert a statutory right of offset under the property code, *see* TEX. PROP. CODE ANN. § 51.003(c) (West 2007);

---

[1] At a post-trial hearing, counsel for appellee represented to the trial court that appellants David Bagwell Company and Evermore Communities, Ltd. filed for bankruptcy on or about May 3, 2012. On November 28, 2012, this Court abated the appeal, citing rule of appellate procedure 8.2, which provides that "[a] bankruptcy suspends the appeal . . . until the appellate court reinstates or severs the appeal in accordance with federal law." TEX. R. APP. P. 8.2. The parties moved to reinstate the appeal on June 11, 2013; the Court reinstated the appeal on June 25, 2013.

alternatively, they argue their live pleadings were sufficient to raise offset. They also complain the trial court erred by striking an affidavit filed in response to the motion for summary judgment as to damages relating to the offset issue. Lastly, they complain the trial court erred by granting appellee's two motions for summary judgment[2] because the affidavits filed in support of those motions were not from a corporate representative with knowledge of the facts.[3] We overrule appellants' issues and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Three Texas limited partnerships (that are not parties to this action) executed three promissory notes in favor of appellee's predecessor-in-interest (which also is not a party to this lawsuit). Each note was secured by a deed of trust lien on a separate tract of land. At the same time, appellants executed guaranty agreements to guarantee payment of the promissory notes. The borrowers later defaulted on the notes and appellee sued them to recover the amounts owed. After the borrowers filed for bankruptcy protection, appellee filed this suit against appellants to recover on the guaranty agreements. Appellants timely answered and denied the allegations.

The trial court entered the parties' Agreed Scheduling Order, which required any amended pleadings asserting new causes of action or affirmative defenses to be filed no later than thirty days before the end of the discovery period. The Agreed Scheduling Order also set the case for trial on June 27, 2011.

On November 2, 2010, appellee filed a motion for summary judgment on its claims for breach of the guaranty agreements. Attached as an exhibit to the motion was the affidavit of Robert G. Paul (First Paul Affidavit). Appellants responded to the motion and objected to the

---

[2] Appellee filed more than two motions for summary judgment. However, only two are relevant to this appeal: the motion filed on November 2, 2010, and the motion filed on March 14, 2012.

[3] In their reply brief, appellants also argue the trial court abused its discretion by denying them leave to amend because they did not have counsel during a time period when the trial court admonished appellants that they would not be permitted to file a new cause of action. We do not consider new arguments raised in the reply brief and, therefore, will not address the ones raised by appellants in their reply brief. *See Collin Cnty. v. Hixon Family P'ship, Ltd.*, 365 S.W.3d 860, 877 (Tex. App.—Dallas 2012, pet. denied).

First Paul Affidavit on several grounds, including that the affidavit did not show Paul had personal knowledge of the facts. The trial court overruled appellants' objections to the affidavit and granted appellee's motion for summary judgment as to liability; however, it denied the motion as to damages.

Appellee obtained relief from the bankruptcy court's automatic stays. Thereafter, on August 2, 2011, it conducted a non-judicial foreclosure and acquired the property securing one of the notes (the Old Grove Property). That same day and two days later, it also acquired the properties securing the other two notes through auctions conducted by the respective bankruptcy trustees. On October 4, 2011, appellee filed its first amended original petition seeking amounts "due and owing" under each note after "all offsets and credits" were applied.

The original June 27, 2011 trial date was delayed several times.[4] The third trial setting was for March 5, 2012. Shortly before the March 2012 trial date, appellants sought a continuance. On March 6, 2012, the trial court held a hearing on appellants' motion for continuance. At that hearing, the trial judge stated:

> The Court has continued this case only for a very limited purpose. And consistent with the scheduling orders entered previously and because the Court agrees with [appellee] that it is past the time where anybody should be asserting new theories of defense or counterclaims, or on [appellee's] side for that matter, no further pleadings may be filed without leave of Court with good cause shown, unless there is agreement of the parties, and I don't anticipate that would happen.

The trial court reset the trial for the week of April 16, 2012.

On March 14, 2012, appellee filed a second motion for summary judgment, supported by a second affidavit from Paul (Second Paul Affidavit), seeking judgment on the amounts due and

---

[4] The record indicates appellants requested a continuance several weeks before the original trial setting, and the parties agreed to reset the trial date to November 7, 2011. On November 7, 2011, appellants filed a verified motion for continuance requesting the trial court delay the trial by 120 days; the trial court granted the motion and reset the trial for March 5, 2012. On February 24, 2012, appellants filed a verified emergency motion for continuance seeking another 120 day delay in the trial date. In response, appellee indicated it was amenable to a short continuance so that it could file a motion for summary judgment on damages. The trial court reset the trial to the week of April 16, 2012.

owing and for attorney's fees. Appellants timely filed their response, supported by an affidavit from appellant Bagwell. They also objected to the Second Paul Affidavit.

At the same time, appellants filed a motion for leave to amend their answer to add an affirmative defense under section 51.003 of the property code with respect to the note that had been secured by the Old Grove Property. Appellants sought to obtain an offset against the deficiency balance of that note in the amount that the Old Grove Property's fair market value exceeded the amount received at the foreclosure sale. Appellants also filed a motion to determine the fair market value of the Old Grove Property.

Appellee objected to appellants' motions as untimely pursuant to the Agreed Scheduling Order. On April 19, 2012, the trial court conducted a hearing on appellants' motion for leave to amend their pleadings and on appellee's second motion for summary judgment. At the conclusion of the hearing, the trial court denied appellants' motion for leave to amend, struck Bagwell's affidavit, overruled appellants' objections to the Second Paul Affidavit, and granted appellee's second motion for summary judgment.

Appellants filed a motion for new trial, which the trial court denied. This appeal followed.

## LAW & ANALYSIS

It is undisputed that appellants sought to amend their pleading after the deadline for doing so in the Agreed Scheduling Order had passed. The Agreed Scheduling Order required any amended pleadings asserting new causes of action or affirmative defenses be filed no later than thirty days before the end of the discovery period. Discovery in the case was controlled by rule 190.3 (Discovery Level 2), which states that the discovery period ends the earlier of thirty days before the date set for trial or nine months after the earlier of the date of the first oral deposition or the due date of the first response to written discovery. TEX. R. CIV. P. 190.3(b).

–4–

From the record, it is unclear when the discovery period closed in this case. However, assuming in appellants' favor that it closed on the latest date possible—thirty days prior to the April 16, 2012 final trial setting—appellants were required to amend their pleading to assert any affirmative defenses no later than thirty days before that date—i.e., before February 17, 2012. However, appellants did not attempt to file their amended petition until the end of March 2012, approximately six weeks later.

On appeal, appellants argue that their live pleadings (even without their proposed amendment) were sufficient to raise the issue of offset and the trial court abused its discretion by denying their motion for leave to amend and striking the pleadings related to the motion. They also argue that the trial court erred by denying their motion to amend their pleadings to assert their section 51.003 affirmative defense.

## A.     Affirmative Defense Already Raised

In their third issue, appellants contend their live pleading on file was sufficient to raise their section 51.003 affirmative defense. Appellants' brief states that their first amended answer, filed on December 13, 2010, included a verified denial of the account on which appellee brought suit and alleged the affirmative defense of accord and satisfaction. Appellants summarily argue this was sufficient to put appellee on notice of their claim for offset, and the trial court abused its discretion by denying their motion for leave to amend and striking their related pleading.

Appellants correctly state that Texas follows a fair notice pleading standard. A plaintiff's petition must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a). The fair notice standard for pleading is satisfied if the opposing party can ascertain from the pleading the nature and basic issues of the controversy, and what type of evidence might be relevant. *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *see also Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757, 766 (Tex. App.—Dallas 2011, no

pet.) (pleading provides fair notice if "opposing attorney of reasonable competence, on review of the pleadings, can ascertain the nature and basic issues of controversy.").

The accord and satisfaction defense that appellants pled rests upon a contract, express or implied, in which the parties agree to discharge an existing obligation by means of a lesser payment tendered and accepted. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 863 (Tex. 2000). As the movant on the defense, appellants would have had to establish the existence of a dispute and an unmistakable communication to appellee in which the parties agreed to the discharge of appellants' debt by means of a lesser payment tendered and accepted. *See id.*

The affirmative defense afforded by section 51.003 of the property code is different. A claim for deficiency arises when real property is sold at foreclosure for a price that is less than the unpaid balance of indebtedness secured by the real property. When a deficiency claim is pursued by a lender, section 51.003 of the Texas Property Code provides that the borrower may request that "the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale." TEX. PROP. CODE ANN. § 51.003(b). If the court determines that the fair market value is greater than the price paid at the foreclosure sale, the borrower is "entitled to an offset against the deficiency amount in the amount by which the fair market value . . . exceeds the sale price." *Id.* § 51.003(c).

Thus, the evidence required to support an accord and satisfaction affirmative defense is markedly different than that required for a section 51.003 defense. Namely, accord and satisfaction does not require any evidence of fair market value of the property subject to the contract; in contrast, fair market value is essential to the section 51.003 affirmative defense. *See id.* § 51.003. Additionally, whether any agreement to discharge the debt has been reached is irrelevant to the section 51.003 affirmative defense, but is central to the accord and satisfaction defense. *See Lopez*, 22 S.W.3d at 863.

We conclude appellants' pleading of accord and satisfaction did not provide fair notice of the affirmative defense of offset under section 51.003 of the property code. *See Low*, 221 S.W.3d at 612. By reviewing appellants' first amended answer, a reasonably competent attorney would not have ascertained appellants' intent to assert an offset under the statute. *See Tapia*, 355 S.W.3d at 766.

Because appellants' pleading did not assert an offset affirmative defense, the trial court did not abuse its discretion by denying the motion for leave to amend and striking the pleadings related to the motion on that ground. We overrule appellants' third issue.

### B. Motion for Leave to Amend

In their first and second issues, appellants argue the trial court abused its discretion by refusing to grant their motion for leave to amend their pleadings to add a section 51.003 affirmative defense. *See Moayedi v. Interstate 35/Chisam Rd., L.P.*, 377 S.W.3d 791, 794, 799 (Tex. App.—Dallas 2013), *aff'd,* No. 12-0937, 2014 WL 2619524, at *1 (Tex. June 13, 2014). Appellants assert two reasons the trial court erred by denying their motion for leave to amend: (1) appellee did not show it was surprised or prejudiced by an amendment and the proposed amendment was not prejudicial on its face and (2) the pleading deadline in the Agreed Scheduling Order for amendments passed six months before appellee amended its pleading to seek a deficiency and so appellants could not have amended their pleading within the pleading deadline.

A trial court has wide discretion to manage its docket and we will not interfere with the exercise of that discretion without a showing of clear abuse. *In re Estate of Henry*, 250 S.W.3d 518, 526 (Tex. App.—Dallas 2008, no pet.) (citing *Roskey v. Cont'l Cas. Co.*, 190 S.W.3d 875, 879 (Tex. App.—Dallas 2006, pet. denied)). We review a trial court's decision whether to grant leave to file an amended pleading for abuse of discretion. *Roskey*, 190 S.W.3d at 879. The trial

court's enforcement of its scheduling order is also reviewed for abuse of discretion. *Id.*; *Gunn v. Fuqua*, 397 S.W.3d 358, 377 (Tex. App.—Dallas 2013, pet. denied) (citing *Hakemy Bros., Ltd. v. State Bank & Trust Co.*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, pet. denied)). An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding rules or principles. *Gunn*, 397 S.W.3d at 377. (citing *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003)).

### 1. Amendment Prejudicial

Generally, a party may amend its pleadings at any time prior to seven days before trial unless the amended pleadings operate as a surprise to the opposing party. TEX. R. CIV. P. 63; *Gunn*, 397 S.W.3d at 377. That deadline may be altered by the trial court in a scheduling order issued pursuant to rule 166. TEX. R. CIV. P. 63; *see also* TEX. R. CIV. P. 166. A party may seek leave of court to amend its pleadings after the deadline imposed by a scheduling order entered pursuant to rule 166. TEX. R. CIV. P. 63. Leave "shall be granted" by the trial court "unless there is a showing that such filing will operate as a surprise to the opposing party." *Id.* A trial court has no discretion to refuse an amended pleading unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and is thus prejudicial on its face, and the opposing party objects to the amendment. *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 622 (Tex. App.—Dallas 2010, no pet.). As we explained in *Halmos*,

> An amendment that is prejudicial on its face has three defining characteristics: (1) it asserts a new substantive matter that reshapes the nature of the trial itself; (2) the opposing party could not have anticipated the new matter in light of the development of the case up to the time the amendment was requested; and (3) the amendment would detrimentally affect the opposing party's presentation of its case.

*Id.* at 623.

As discussed above, the section 51.003 affirmative defense, if allowed, would have been a new substantive matter injected into the trial. The record does not reflect that the fair market value of the Old Grove Property had been an issue in the case up to the time when appellants sought to amend their pleading. At the time appellants filed their motion to amend, the only issue remaining in the case was the amount of damages, if any, to which appellee was entitled. Appellee sought to recover on the deficiency, which would not have required the trial court to consider the fair market value of the Old Grove Property. Allowing the amended pleading would have significantly changed the issues to be tried.

Additionally, the section 51.003 affirmative defense was a new matter that appellee could not have anticipated in light of the case's development up to the point when appellants sought the amendment. The affirmative defenses previously pled by appellants gave no indication they would seek a determination of fair market value of the Old Grove Property or that they would seek an offset against the deficiency amount.

The case had been set for trial on three different dates in the time period between when appellee filed its amended petition and when appellants sought to add the section 51.003 affirmative defense. Each trial delay was in response to a motion filed by appellants. Yet none of those motions mentioned that appellants needed additional time to consider or pursue a section 51.003 affirmative defense or examine a fair market value issue. Rather, appellants waited until March 2012 to raise the issue. Not only did more than five months elapse between the time the section 51.003 issue became relevant, but two trial settings passed by and a third one approached. It would have been reasonable for appellee to assume that if appellants intended to raise a section 51.003 defense, then they would have done so in preparation for the earlier trial settings.

As the trial judge explained at the hearing on appellants' motion for new trial:

As I noted in the previous hearing, Mr. Bagwell had more than ample time and knowledge of the pertinent facts to have brought this issue before the Court in a timely manner. He was represented throughout that time by very competent counsel. And I was not, and am not, persuaded that the law requires me to permit him to inject a very significant issue into a two-year-old case as late as he did.

Appellee had no reason to be prepared to try a fair market value defense only a few weeks before the trial setting.

Trying a fair market value defense also would have required appellee to engage a new expert witness. Counsel for appellee represented to the trial court that appellee would be:

left with trying a case on a fair market value defense with no experts designated by the other side to testify on these issues, including Mr. Bagwell; with no opportunity to depose him on all of these facts they are alleging, many of which are stated in their summary judgment response that are blatant hearsay without any support behind it; and no opportunity to seek evidence or discovery against the other witness that [appellants' counsel] has referenced during his statements to the Court.

The trial court agreed, explaining at the hearing on appellants' motion for new trial:

. . . [a] trial on the determination of fair market value is [] it is inherent in the nature of that issue that expert testimony will be required from both sides.
[Appellants] may be content to rely on Mr. Bagwell as an expert. But I suspect that [appellee] would feel compelled to get an appraiser. It will take time and cost money to do that. And given the long history of this proceeding, I don't consider that it would be fair or just to require the [appellee] to do so.

Based on this record, the trial court could conclude that allowing the amendment would detrimentally affect appellee's presentation of its case.

Appellants cite *John H. Thomas, M.D. v. Graham Mortgage Corp.*, 408 S.W.3d 581 (Tex. App.—Austin 2013, pet. denied), to support their argument that the trial court abused its discretion by refusing to permit appellants to amend their pleading. *Thomas* concerned the nonjudicial foreclosure of a property owned by Thomas and secured by a note and deed of trust in favor of the bank. *Id.* at 585. After foreclosure, the bank sought to recover from Thomas the deficiency balance owed on the loan. *See id.* at 587. The bank filed a motion for summary

–10–

judgment seeking, among other things, recovery of the deficiency owed by Thomas. *Id.* Thomas also asserted claims against the bank and filed his own motion for summary judgment. *Id.* at 586. The trial court set both motions for hearing. *Id.* at 587.

Ten days before the summary judgment hearing, Thomas filed an amended motion for summary judgment, which the bank objected to as untimely. *Id.* Two days before the hearing, Thomas filed an answer to the bank's pending counterclaim for deficiency and, in the alternative, a motion for an appraisal. *Id.* The bank moved to strike the motion for appraisal on the ground that it operated as an unfair surprise under rule 63. *Id.* at 593. One day before the summary judgment hearing, Thomas filed a motion to continue the hearing. *Id.* at 587.

At the hearing, the trial court denied Thomas's motion for continuance. *Id.* The trial court also granted the bank's motion to strike Thomas's motion for an appraisal and granted the bank's objection to Thomas's amended motion for summary judgment. *Id.* Finally, the trial court denied Thomas's motion for summary judgment and granted the bank's motion. *Id.*

The court of appeals noted that no document in the record indicated that Thomas requested or obtained leave of court before filing his amended answer or motion. *Id.* at 593. On appeal, the bank argued the pleading was prejudicial on its face and the trial court properly excluded it. *Id.* However, the court concluded the bank did not present any evidence of surprise or prejudice. *Id.* at 594. The court stated: "Although the Bank foreclosed on the Property in September 2009, it waited until February 2011 to amend its pleadings to assert its deficiency counterclaim. Three days after asserting its deficiency claim, the Bank Defendants moved for summary judgment on the claim, and less than two months later, Thomas amended his pleadings and requested an offset under section 53.001." *Id.* Under those circumstances, the court concluded no surprise or prejudice was apparent on the face of the pleadings; the bank "could have anticipated that Thomas would assert a section 53.001 offset defense." *Id.* Thus, the court

–11–

concluded, the trial court abused its discretion by striking Thomas's motion for appraisal and granting summary judgment on the bank's deficiency claim. *Id.*

We consider *Thomas* distinguishable. The *Thomas* opinion does not discuss the existence of a scheduling order. Thus, the Austin court of appeals did not consider whether the trial court acted within its discretion by enforcing its scheduling order, which is one of the issues before us. In the case at hand, the trial court had entered the parties' Agreed Scheduling Order, and allowing appellants to plead a new affirmative defense would have violated that order. The trial court had discretion to enforce its scheduling order. *See Gunn*, 397 S.W.3d at 377. Further, while the *Thomas* court stated only two months lapsed between the time between the bank asserting its deficiency claim and Thomas requesting to amend his pleadings, here the time lapse was nearly six months—from October 4, 2011, to March 30, 2012. Finally, by the time appellants sought to amend their pleading, there was only one remaining issue before the trial court: the amount of damages, if any. However, the *Thomas* opinion does not indicate that any issues in the case had been resolved when Thomas sought to add his affirmative defense, which indicates the entire case still remained to be decided and, perhaps, adding a new affirmative defense would not have significantly impacted the trial. We do not consider the *Thomas* court's conclusions to be persuasive when applied to the facts before us.

In summary, appellants' requested amendment asserted a new affirmative defense that would have "inject[ed] a very significant issue" into the case and would have reshaped the nature of the trial from one about the amount of any deficiency owed to appellee to a trial about the fair market value of the Old Grove Property and any offset to which appellants might be entitled. Appellee could not have anticipated that appellants would assert a section 51.003 affirmative defense based on the development of the case up to the time the amendment was requested. The amendment would have detrimentally affected appellee's presentation of its case, and appellee

–12–

objected to the proposed amendment. Thus, we conclude the trial court did not abuse its discretion by enforcing its scheduling order and refusing to permit appellants to amend their pleading. *See Halmos*, 314 S.W.3d at 622.

### 2. Pleading Deadline Impossible to Meet

Appellants also contend the deadline for amendments in the Agreed Scheduling Order was six months before appellee amended its pleading to reflect a revised balance on the debt following the foreclosure and so appellants could not have amended their pleading within the pleading deadline.

Appellee amended its pleading to revise the balance owed on the debt on October 4, 2011. Without citing to the record, appellants assert that the pleading deadline pursuant to the trial court's Agreed Scheduling Order was April 27, 2011. Therefore, appellants argue, "it is fundamentally unfair and unjust to hold Appellants to a pleading deadline that occurred six months prior to the date of the accrual of the claim and the resulting the [sic] defense."

As previously discussed, based on the record before us, we are unable to determine the deadline for filing amended pleadings. Thus, we are unable to conclude whether the pleading deadline passed before appellee amended its petition to seek a deficiency judgment on the Old Grove Property or whether appellee amended its pleading within the time frame allowed by the Agreed Scheduling Order, and whether appellants could have done the same had they not delayed in asserting the section 51.003 defense by five months.

Additionally, appellants' argument still ignores the fact that appellants waited five months to add a section 51.003 affirmative defense after appellee filed its revised pleading. This case does not present a situation where appellee amended its pleading and appellants sought to respond with an amended pleading of their own shortly thereafter. Rather, the record before us shows that appellants waited five months—during which time the trial date was reset three times

–13–

at appellants' request—before attempting to add a new affirmative defense that would "inject a very significant issue" into the case, require testimony from additional expert witnesses, and further delay the trial setting.

### 3. Conclusion

We overrule appellants' first and second issues.

### C. Affidavits

In their fourth, fifth, and six issues, appellants complain about the trial court's rulings striking the Bagwell affidavit and not striking the First and Second Paul Affidavits. We review a trial court's decision to admit or exclude summary judgment evidence under an abuse of discretion standard. *Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C*., 180 S.W.3d 889, 892 (Tex. App.—Dallas 2005, pet. denied) (op. on reh'g); *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 852 (Tex. App.—Dallas 2003, no pet.). We must uphold the trial court's ruling if the record shows any legitimate basis supporting that ruling. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *see also Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.).

### 1. Bagwell Affidavit

The Bagwell affidavit was attached to appellants' proposed second amended answer (which the trial court struck), as well as appellants' response to the second motion for summary judgment. The affidavit set forth Bagwell's opinion about the fair market value of the Old Grove Property on the date of foreclosure. This information might have proved relevant to appellants' proposed affirmative defense under section 51.003. However, we have concluded that appellants' live pleadings did not raise that affirmative defense and that the trial court did not abuse its discretion by denying appellants' motion for leave to amend to assert that affirmative defense. As the contents of the Bagwell affidavit were not relevant to the issues raised by the

–14–

pleadings and set forth in the second motion for summary judgment, we cannot conclude the trial court's striking of Bagwell's affidavit was an abuse of discretion, *see Allbritton,* 180 S.W.3d at 892, or probably caused the rendition of an improper judgment, *see* TEX. R. APP. P. 44.1(a)(1). We overrule appellants' fourth issue.

### 2.     First and Second Paul Affidavits

Appellants argue the two affidavits from Paul did not show he had personal knowledge of the facts, and the trial court erred by admitting them as evidence in support of appellee's two motions for summary judgment.

In the First Paul Affidavit, Paul averred that a Texas limited partnership executed and delivered a real estate lien note to Texas State Bank. Appellants Bagwell, Bagwell Trust, Bagwell Company, and Evermore delivered guaranty agreements to Texas State Bank, which unconditionally guaranteed payment of all monies due and owing on the terms of the note. Copies of the note, guaranty agreements, modifications, renewals, and extensions were attached to the First Paul Affidavit. He stated that Compass Bank was the successor-in-interest to Texas State Bank and Compass Bank sold all loan-related documents to appellee.

Appellants argue Paul did not explain how he had "personal knowledge of the execution, modification, extension, maturity or offsets and credits under the Notes and other loan documents. Paul does not state how he has personal knowledge that Compass Bank is the successor-in-interest to Texas State Bank." Therefore, appellants argue, the First Paul Affidavit is incompetent evidence and cannot support the trial court's first order granting appellee's first motion for summary judgment.

As to the Second Paul Affidavit, appellants again claim it does not show Paul had personal knowledge. Appellants argue that the Second Paul Affidavit contains statements that conflict with the loan documents that were part of appellee's second motion for summary

–15–

judgment and those conflicts created a genuine issue of material fact. Appellants cite the Second Paul Affidavit, which states that the three partnerships executed and delivered the notes to Alta Vista when the documents show they were delivered to Texas State Bank. Further, they claim the affidavit does not explain how appellee came into possession of the notes. Finally, appellants argue the Second Paul Affidavit does not address all of the requirements to prevail in a deficiency suit.

In the both the First and Second Paul Affidavits, Paul averred that he had personal knowledge of the "matters stated in this affidavit and they are true and correct." He further stated that he was employed as a manager at Ridge at Alta Vista Investments I, LLC. His job responsibilities included "servicing and collection of indebtedness owed to Alta Vista" by appellants. He was the custodian of these records, he was familiar with the manner and method in which appellee maintains its books and records, and he had reviewed the books and records related to appellants' indebtedness. He also averred that appellee's business records support the statements in the affidavit and "[a]ll of the records attached to this Affidavit are the original or exact duplicates of the original."

The documents attached to Paul's affidavit support his statements. The "Second Modification, Renewal, and Extension Agreement" specifically recites that it is between "Compass Bank, successor-in-interest to Texas State Bank," the limited partnership, and appellants. The Second Modification, Renewal, and Extension Agreement was signed by Compass Bank, "successor-in-interest to Texas State Bank," as the Lender and Bagwell on behalf of himself and the other appellants. Paul also attached a "Notice of Assignment of Note, Loan Agreement and Loan Documents and Notice of Default," which "serve[d] as notice that the original Lender has . . . assigned all of Lender's right, title and interest in and to the Note, Loan

Agreement, and other Loan Documents to Ridge At Alta Vista Investments, I, LLC, a Texas limited liability company. . ."

Based on the statements in each of Paul's affidavits, we conclude the affidavits demonstrated a sufficient basis for Paul's personal knowledge regarding the facts. *See Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 843 (Tex. App.—Dallas 2014, no pet.) (citing *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 791-92 (Tex. App.—Dallas 2013, pet. denied) (for summary judgment affidavit to have probative value, affiant must swear facts in the affidavit reflect his personal knowledge; references to true and correct copies of documents in support of an affidavit can establish personal knowledge)); *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 552 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts). Further, the documents attached to the First and Second Paul Affidavits clearly showed that Compass Bank was the successor-in-interest to Texas State Bank, and appellee acquired all rights to the loan documents. Therefore, we conclude the trial court did not abuse its discretion by overruling appellants' objections to the First and Second Paul Affidavits. We overrule appellants' fifth and sixth issues.

## CONCLUSION

We affirm the trial court's judgment.

/Jim Moseley/  
JIM MOSELEY  
JUSTICE

FitzGerald, J. dissenting

121115F.P05

–17–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID S. BAGWELL, INDIVIDUALLY
AND AS TRUSTEE OF THE DAVID S.
BAGWELL TRUST, MARILYN D.
GARNER, CHAPTER 7 TRUSTEE FOR
THE DAVID BAGWELL COMPANY,
AND EVERMORE COMMUNITIES,
LTD., Appellants

No. 05-12-01115-CV          V.

RIDGE AT ALTA VISTA INVESTMENTS
I, LLC, A TEXAS LIMITED LIABILITY
COMPANY, Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-04398-E.
Opinion delivered by Justice Moseley.
Justices O'Neill and FitzGerald participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Ridge at Alta Vista Investments I, LLC, A Texas Limited
Liability Company, recover its costs of this appeal from appellant David S. Bagwell, Individually
and as Trustee of the David S. Bagwell Trust, Marilyn D. Garner, Chapter 7 Trustee for the
David Bagwell Company, and Evermore Communities, Ltd.

Judgment entered this 14th day of August, 2014.