AFFIRM; Opinion issued February 14, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01524-CV

### DEZMA GONERWAY, Appellant

### V.

### CORRECTIONS CORPORATION OF AMERICA, Appellee

**On Appeal from the 193rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-12407-L[1]**

# OPINION

Before Justices FitzGerald, Fillmore, and Richter[2]
Opinion By Justice Fillmore

Appellant Dezma Gonerway appeals the trial court's order granting summary judgment in favor of appellee Corrections Corporation of America (CCA). In three issues, Gonerway contends the trial court erred by denying her motion for continuance of the hearing of CCA's motion for summary judgment and by granting summary judgment in favor of CCA. We affirm the trial court's judgment.

---

[1] This case was assigned cause number DC-11-12407-L by a September 21, 2011 order of severance from cause number DC-08-13151-L.

[2] The Honorable Martin E. Richter, Retired Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

## Background

The record indicates that Gonerway's fourth amended petition was the live pleading at the time the trial court granted summary judgment in favor of CCA. In that pleading, Gonerway sued CCA, the University of Texas Medical Branch at Galveston (UTMB), Chong's Beauty Supply, Theg, Inc. (Theg), and ROI International Corporation (ROI). Gonerway asserted claims of negligence and gross negligence against CCA.[3]

According to Gonerway's pleading, on or about October 2006, she was an inmate in the Dawson State Jail (Dawson), a private correctional facility operated and/or administered by CCA under a contract with the Texas Department of Criminal Justice (TDCJ). UTMB "administered the medical program" at Dawson. While in the "exclusive custody and control of CCA," she "developed a severe eye infection which required urgent, emergency medical treatment," and after a delay of several days, she was admitted to Parkland Hospital for medical treatment. Gonerway alleged CCA and UTMB breached their non-delegable duty to insure that she received proper and timely medical care during her incarceration, and their negligence and gross negligence in failing to provide adequate emergency medical care proximately caused her eye injury. Gonerway further alleged CCA was "negligent and grossly negligent in failing to follow their own, and [TDCJ] regulation" by allowing Gonerway to wear non-corrective, cosmetic contact lenses, which proximately caused or contributed to her injuries and damages.

CCA filed a combined traditional and no-evidence motion for summary judgment and a supplement thereto. See TEX. R. CIV. P. 166a(c), (i). By order signed July 18, 2011, the trial court granted summary judgment in favor of CCA. By subsequent order, Gonerway's claims against CCA

---

[3] Although in her appellate brief Gonerway asserts she alleged a breach of contract claim against CCA, there is no allegation of a breach of contract claim against CCA in Gonerway's pleading.

were severed into a separate cause of action.[4] *See* TEX. R. CIV. P. 41 ("Any claim against a party may be severed and proceeded with separately."); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 680 (Tex. App.—Dallas 2000, no pet.) (trial judge may sign an order severing a party, cause of action, or issue, thereby rendering otherwise interlocutory summary judgment final). The trial court signed the final judgment in the severed action dismissing Gonerway's claims against CCA with prejudice. Gonerway filed this appeal of the summary judgment granted in favor of CCA.

## Motion for Continuance or Abatement

In her first issue, Gonerway contends the trial court erred by failing to grant a continuance of "the hearing and decision" on CCA's motion for traditional and no-evidence summary judgment. On June 1, 2011, Gonerway filed her motion for continuance or abatement of proceedings. According to her motion, Gonerway's husband informed her attorney that Gonerway had been re-confined to jail. Gonerway moved to have all proceedings continued until her jail sentence had been served. Gonerway alternatively moved to continue or abate proceedings until Theg and ROI, named as defendants in Gonerway's January 19, 2011 fourth amended petition, had been served with citation.

As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion, and the trial court (1) ruled on the request, objection, or motion, either expressly or implicitly, or (2) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal. TEX. R. APP. P. 33.1(a). Here, although Gonerway states in her first issue that the trial court denied her motion

---

[4]    In her initial notice of appeal, Gonerway indicated she was appealing the trial court's order of severance. In her second notice of appeal, Gonerway appealed the summary judgment granted in favor of CCA. The first appeal, No. 05-11-01452-CV, was consolidated in this appeal. Gonerway's appellate brief contains no argument concerning the propriety of the severance. At oral submission, Gonerway's counsel acknowledged that Gonerway had agreed to the severance and she was not asserting on appeal that the trial court erred in granting the severance of Gonerway's claims against CCA.

for continuance or abatement, the record does not show the trial court ruled on the motion. The record does not show Gonerway called her motion to the attention of the trial court. Moreover, even if the trial court refused to rule on Gonerway's motion, which is not reflected in the record, there is nothing in the record to show Gonerway objected to such a refusal.

Therefore, Gonerway has failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1(a); *Hightower v. Baylor Univ. Med. Ctr.*, 251 S.W.3d 218, 224–25 (Tex. App.—Dallas 2008, pet. struck); *see also Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 626 (Tex. App.—Dallas 2004, pet. denied) (party who failed to obtain ruling from trial court on motion for jury trial continuance failed to preserve error); *Washington v. Tyler Indep. Sch. Dist.*, 932 S.W.2d 686, 690 (Tex. App.—Tyler 1996, no writ) (party's failure to obtain written ruling on motion for continuance of summary judgment hearing waived any error). Accordingly, we resolve Gonerway's first issue against her. *See Vela v. Manning*, 314 S.W.3d 693, 694 (Tex. App.—Dallas 2010, pet. denied); *Hightower*, 251 S.W.3d at 224–25.

## Summary Judgment

In her second issue, Gonerway contends the trial court erred by granting summary judgment in favor of CCA. In her third issue, Gonerway argues the trial court erred by granting CCA summary judgment because she raised and "supported" genuine issues of material fact.

The standards of review for traditional and no-evidence summary judgments are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and she is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence summary judgment under the same legal sufficiency standard used to review

a directed verdict. *Gish,* 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i). To defeat a no-evidence summary judgment, the non-movant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Gish,* 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i). In reviewing both a traditional and a no-evidence summary judgment, we review the evidence in the light most favorable to the non-movant. *Smith v. O'Donnell,* 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker,* 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the non-movant if reasonable jurors could, and we disregard contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009); *Gish,* 286 S.W.3d at 310. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in her favor. *City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex. 2005).

Where, as here, a party moves for summary judgment on multiple grounds and the trial court's order granting summary judgment does not specify the ground or grounds on which it was based, the party appealing that order must negate all possible grounds upon which the order could have been granted. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Jarvis v. Rocanville Corp.,* 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied). We must affirm the summary judgment if any of the summary judgment grounds are meritorious. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004).

Gonerway alleged CCA was negligent and grossly negligent. According to Gonerway, CCA owed her a duty to insure she received proper and timely medical care during her incarceration and CCA breached that duty by failing to provide emergency medical care, proximately causing permanent and disabling injuries. Gonerway also alleged CCA failed to follow its own and TDCJ's regulation by allowing Gonerway to wear non-corrective, cosmetic contact lenses, which proximately

caused or contributed to her injuries. Finally, Gonerway alleged CCA's breach of duty was made consciously, willfully, wantonly, and with gross lack of regard for Gonerway's condition.

In its traditional motion for summary judgment, CCA asserted (1) it had no duty to provide medical care to Gonerway, (2) to the extent CCA had a duty to notify medical personnel when an inmate was in need of emergency medical attention, it fulfilled that duty, and (3) because Gonerway's ordinary negligence claim fails as a matter of law, her gross negligence claim must also fail. In its no-evidence motion for summary judgment, CCA asserted Gonerway has no competent summary judgment evidence that (1) CCA owed Gonerway a duty to provide medical care, (2) CCA breached any alleged duty to provide medical care or timely address her requests for medical attention, (3) any alleged breach of duty proximately caused injury to Gonerway, (4) CCA acted or failed to act in a situation involving an extreme degree of risk, or (5) CCA had actual, subjective awareness of the alleged risk involved, but nevertheless, proceeded in conscious indifference to Gonerway's rights. When a party moves for a traditional summary judgment under rule 166a(c) and a no-evidence motion for summary judgment under rule 166a(i), we first review the trial court's judgment under the standards of rule 166a(i). *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 230–31 (Tex. App.—Dallas 2012, no pet.).

The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty. *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). Whether a duty exists is a question of law for the court. *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002).

Once CCA filed its no-evidence motion for summary judgment, the burden shifted to Gonerway to present evidence raising a genuine issue of material fact as to whether CCA had a duty to provide emergency medical care to Gonerway. *See Mack Trucks, Inc. v Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (once no-evidence motion for summary judgment is filed, the burden shifts to nonmoving party to present evidence raising an issue of material fact as to elements specified in the motion); *see also* TEX. R. CIV. P. 166a(i) (to refute no-evidence motion for summary judgment, nonmovant required to produce "summary judgment evidence raising a genuine issue of material fact").

*Alleged Duty to Provide Medical Care*

Gonerway alleged she was incarcerated at Dawson, a private correctional facility operated and/or administered by CCA, under a contract with TDCJ (the Dawson Contract). Gonerway further alleged UTMB administered the medical program at Dawson. However, Gonerway relied on the following portion of the Dawson Contract as summary judgment evidence in responding to CCA's claim in its motions for traditional and no-evidence summary judgment that it had no duty to provide emergency medical care to Gonerway:

> TDCJ will contract with the Correctional Managed Health Care Committee (CMHCC) to provide complete health care services including medical, dental, mental health, pharmaceutical, medical records, emergency care, and sick call services for offenders assigned to [Dawson]. [CCA] shall be responsible for working cooperatively with the CMHCC's designated health care staff to ensure the effective operation of the health care program at [Dawson]. The TDCJ Division Director for Health Services will be the final authority in the event of a disagreement between [CCA] and CMHCC's health care staff relating to the delivery of health care services. [CCA] will be responsible for providing security, general housekeeping and facility maintenance in the medical area of [Dawson].

Gonerway argued the contractual language stating that any disagreement between CCA and the medical provider relating to the delivery of health care services connotes CCA has the authority to

-7-

question the level of medical care provided to an inmate, and this is evidence CCA has a duty to provide medical care to a Dawson inmate.

"When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). In reviewing this summary judgment evidence in the light most favorable to Gonerway, we conclude the evidence does no more than create a mere surmise or suspicion that CCA had a duty to provide medical care to Gonerway as an inmate at Dawson. Because Gonerway did not meet her burden under rule 166a(i), the trial court did not err in granting summary judgment in favor of CCA.

However, even assuming the language of the Dawson Contract relied upon by Gonerway constituted more than a scintilla of evidence that CCA had a duty to provide medical care to Gonerway, we conclude CCA satisfied its burden to establish that no genuine issue of material fact exists and CCA was entitled to judgment as a matter of law under its motion for traditional summary judgment. *See* TEX. R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (movant must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law); *see also Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (we review trial court's grant of traditional motion for summary judgment de novo).

In addition to portions of the Dawson Contract, CCA relied upon the affidavit of Erica Russell as evidence in support of its motion for traditional summary judgment. By affidavit, Russell

attested she had been employed by CCA and worked at Dawson since 2004, and was employed as a Public Information Officer at the time of executing her affidavit. At the time of Gonerway's 2006 incarceration at Dawson, Russell was employed as a Case Manager and her "responsibilities included inmates who were housed on the tenth floor" of Dawson where Gonerway was housed. In her affidavit, Russell attested that as Case Manager and Public Information Officer, she has personal knowledge of the Dawson Contract. Russell indicated that since January 2004, CCA has managed Dawson in accordance with the terms of the Dawson Contract. Russell attested CCA does not provide medical services to Dawson inmates and does not employ any of the nurses, doctors, or other medical staff who work at Dawson. Pursuant to the Dawson Contract, TDCJ contracts with CMHCC "to provide complete health care services" to Dawson inmates, and UTMB has provided medical services to Dawson inmates since CCA began managing Dawson in 2004.[5]

The summary judgment proof established that TDCJ contracted with CMHCC to provide medical care to Dawson inmates. According to Gonerway's pleadings and the summary judgment evidence, UTMB provided the medical care to Dawson inmates at all relevant times. We conclude CCA established as a matter of law that it did not have a duty to provide medical care to Gonerway, thereby entitling CCA to judgment on Gonerway's allegation it was negligent for failing to provide her emergency medical care. We conclude the trial court did not err in granting summary judgment in favor of CCA on this negligence claim. *See Clear Creek Basin Auth.*, 589 S.W.2d at 678; *see also Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991) (for defendant to be entitled to

---

[5]    CCA initially relied upon the affidavit of Rolanda Winfield in support of its motion for summary judgment. Winfield served as the assistant warden at Dawson. Prior to that, Winfield was Chief of Security at Dawson for part of 2007 and 2008. Gonerway's causes of action against CCA were alleged to have accrued in 2006. Gonerway moved to strike portions of Winfield's affidavit as inadmissible hearsay because Winfield did not explain how she had personal knowledge of matters prior to 2007. The record contains no ruling on Gonerway's motion to strike portions of Winfield's affidavit. Subsequent to Gonerway's motion to strike that summary judgment evidence, CCA filed Russell's affidavit as summary judgment evidence in which Russell attested to the same matters as Winfield, and the record contains no objection or motion to strike Russell's affidavit by Gonerway.

summary judgment, it must disprove as a matter of law one of the essential elements of each of plaintiff's causes of action).

*Alleged Duty to Comply With Regulation*

Gonerway further alleged that by allowing her to wear non-corrective, cosmetic contact lenses, CCA was negligent in failing to follow its own and TDCJ's "regulation," which proximately caused or contributed to Gonerway's injuries and damages. In its traditional and no-evidence motion for summary judgment, CCA asserted there was no evidence of a duty owed to Gonerway by CCA, a breach of an alleged duty by CCA, or that a breach by CCA of an alleged duty to Gonerway caused her injuries or damages.

In response to CCA's no-evidence motion for summary judgment, Gonerway relied on the TDCJ Offender Orientation Handbook provided to Gonerway at the time she was transferred to Dawson. That orientation handbook provides:

> Newly-received offenders are permitted to bring the following items: . . .
>
> b. Health Care Devices and supplies, medically prescribed items will be evaluated by TDCJ Health Services staff, contact lenses shall be allowed only until state-issued eyeglasses are provided to the offender.

However, the orientation handbook is that of TDCJ, not CCA. Moreover, the orientation handbook provides that health care devices and supplies will be evaluated by TDCJ Health Services staff, not CCA. A review of the record shows Gonerway did not present any competent summary judgment evidence in response to CCA's no-evidence motion for summary judgment raising a genuine issue of material fact on the allegation CCA failed to follow its own "regulation."[6] Further, Gonerway produced no competent summary judgment evidence that CCA had an obligation to

---

[6] Indeed, Gonerway did not argue in her response to CCA's motion for traditional and no-evidence summary judgment that CCA failed to adhere to its own "regulation." Instead, Gonerway argued that "CCA, contrary to TDCJ regulations, permitted [her] to wear the contact lenses."

implement the provision of the TDCJ Offender Orientation Handbook upon which she relies.[7] While we take as true all evidence favorable to the non-movant and indulge reasonable inferences and resolve doubts in the non-movant's favor, Gonerway did not meet her summary judgment burden under rule 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (under rule 166a(i), non-movant must produce summary judgment evidence raising a genuine issue of material fact to defeat summary judgment under that provision, and genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced). Because Gonerway did not meet her burden under rule 166a(i), we conclude the trial court did not err in granting summary judgment in favor of CCA on Gonerway's claim that CCA was negligent in allegedly failing to follow its own "regulation," or the "regulation" of TDCJ.

### Alleged Duty to Notify Medical Personnel

Gonerway alleged that CCA owed her a duty to insure she received proper and timely medical care. Gonerway alleged this duty was breached because CCA failed to provide emergency medical care. Even if Gonerway's allegations could be broadly construed to include a complaint that CCA had a duty to *notify* medical personnel when it became aware of her condition and breached that duty, her complaint cannot survive CCA's no-evidence motion for summary judgment.

Portions of Gonerway's deposition testimony transcript were attached to CCA's motion for traditional and no-evidence summary judgment. Gonerway testified that on the morning of October 4, 2006, the first full day of her incarceration at Dawson, she placed a contact lens in her right eye

---

[7] We note that in Russell's affidavit, she attested:

> The TDCJ Offender Operation Handbook addresses inmates wearing contact lenses. CCA is not responsible for assessing whether inmates are wearing contact lenses. Instead, that is done by TDCJ during initial intake. Because Inmate Gonerway arrived from another TDCJ facility, the Woodman State Jail, her initial intake interview was done by Woodman and not Dawson. If Dezma Gonerway had been questioned about contact lens use at Dawson, that questioning or evaluation would have been done by medical personnel who are not CCA employees. CCA employees do not have the responsibility for determining whether inmates are wearing contact lenses or providing them with eye glasses.

and immediately felt pain. According to Gonerway, other inmates were aware of her discomfort and alerted the "picket officer" that medical attention was necessary to address Gonerway's pain. Gonerway testified that the "picket officer" contacted "medical" with a "code blue," an emergency code, and two nurses arrived within twenty to thirty minutes. The nurses placed Gonerway in a wheelchair and took her to the medical clinic on the second floor of the Dawson facility. The nurses treated Gonerway's eye and returned her to her dorm.

Gonerway testified that later that same day, a fellow inmate helped her write a request to be seen by a doctor on a form described as an "I-60," and the form was deposited in the "sick call box." Gonerway was taken to the medical clinic at the Dawson facility for follow-up observation and treatment by nursing staff three times on October 5. Gonerway continued to place "I-60" forms in the sick call box and was observed and treated by nursing staff three times a day on October 6, October 7, and October 8. During Gonerway's visit to the Dawson medical clinic on October 9, she was seen by an opthalmologist, who arranged for Gonerway to be transferred to Parkland Hospital for further treatment.

Gonerway provided legally insufficient evidence that CCA did not promptly notify medical personnel of her requests for medical treatment. In fact, the evidence supplied by Gonerway indicates the opposite. On the day Gonerway first experienced pain in her right eye, the "picket officer" responded immediately by initiating a "code blue" request for medical treatment. Gonerway was taken to the medical clinic at Dawson within twenty to thirty minutes after the "code blue" notification was made. Gonerway testified that she was taken to the medical clinic at Dawson for observation and treatment three times a day each of the next four days, and was transferred to Parkland Hospital on the sixth day. Assuming, without deciding, that Gonerway has alleged a duty on the part of CCA to notify medical personnel of the pain in her right eye and that such a legal duty

–12–

exists, Gonerway has failed to produce more than a scintilla of evidence that the duty was breached by CCA. *Ridgway*, 135 S.W.3d at 600. Because Gonerway did not meet her burden under rule 166a(i), the trial court did not err in granting summary judgment in favor of CCA.

*Alleged Gross Negligence*

Gonerway alleged that CCA's breaches of duty "were made consciously, willfully, wantonly, and with gross disregard for [her] physical and emotional condition," constituting gross negligence that proximately caused her injuries. Other than in worker's compensation cases in which exemplary damages are sought for the death of an employee covered by workers' compensation insurance, *see Wright v. Gifford-Hill & Co.*, 725 S.W.2d 712, 714 (Tex. 1987), a finding of ordinary negligence is a prerequisite to a finding of gross negligence. *See First Assembly of God, Inc. v. Tex. Utilities Elec. Co.*, 52 S.W.3d 482, 494 (Tex. App.—Dallas 2001, no pet.) (although gross negligence refers to a different character of conduct than ordinary negligence, one cannot be grossly negligent without being negligent). Because we have concluded Gonerway's negligence claims against CCA must fail, it follows that Gonerway's claims that CCA was grossly negligent also must fail. *See id.* Accordingly, we conclude the trial court did not err in granting summary judgment in favor of CCA on Gonerway's gross negligence claims.

We resolve Gonerway's second and third issues against her.

**Conclusion**

Having concluded the trial court did not err in granting summary judgment in favor of CCA, we affirm the trial court's judgment.

_____
ROBERT M. FILLMORE
JUSTICE

111524F.P05

-13-



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DEZMA GONERWAY, Appellant

No. 05-11-01524-CV      V.

CORRECTIONS CORPORATION OF AMERICA, Appellee

Appeal from the 193rd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. DC-11-12407-L).

Opinion delivered by Justice Fillmore, Justices FitzGerald and Richter participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellee Corrections Corporation of America recover its costs of this appeal from appellant Dezma Gonerway.

Judgment entered February 14, 2013.

_____
ROBERT M. FILLMORE
JUSTICE