**Affirmed and Opinion Filed June 5, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00206-CV

### MCKINNEY AVENUE PROPERTIES NO. 2, LTD., Appellant
### V.
### BRANCH BANK AND TRUST COMPANY, EAGLE TX I SPE, LLC, HAYNIE RAKE REPASS & LAWRY, P.C., AND GREENWAY-BOLL STREET, L.P., Appellees

On Appeal from the County Court at Law No. 2
Dallas County, Texas
Trial Court Cause No. CC-10-08500-B

## MEMORANDUM OPINION
Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Francis

This case arises out of the foreclosure and sale of a commercial property that was the security for a $3.4 million loan held by Branch Bank and Trust Company. McKinney Avenue Properties No. 2, Ltd. (MAP2), the owner of the property, sued the Bank and others for fraud in a real estate transaction and breach of contract after the Bank refused to restructure the loan. The Bank counterclaimed to recover the deficiency between what was owed on the note and what was collected at the sale. Almost three years into the lawsuit, MAP2 placed a notice of lis pendens on the property. A month later, Greenway-Boll Street, L.P., the subsequent purchaser, intervened to quiet title and expunge the lis pendens.

In multiple summary judgment rulings, the trial court granted a take-nothing judgment on MAP2's claims against the Bank, awarded the Bank a deficiency judgment of $519,541.31,

quieted title to the property in Greenway, and ordered the lis pendens expunged. The trial court also struck MAP2's late-filed amended pleadings that added the remaining appellees as parties as well as additional causes of action and affirmative defenses against the Bank.

In five issues, MAP2 challenges the trial court rulings granting the summary judgments against it, striking its amended pleadings, and denying its request for a continuance to conduct more discovery after Greenway intervened. For reasons set out below, we conclude MAP2's issues are without merit and affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The property at issue is known as Uptown Square. In November 2010, the Bank notified MAP2 it was in default on the note secured by the property. When the default was not cured, the Bank posted the property for foreclosure on December 7, 2010, and notified MAP2.

The day before the foreclosure sale, MAP2 filed its original petition and application for injunctive relief, naming the Bank, its manager, and its attorneys as parties. The petition alleged the defendants promised to restructure the loan on Uptown Square on specific terms in consideration of MAP2's dismissal of its pending bankruptcy with prejudice against refiling for one year and payment of all outstanding tax liens, accrued and unpaid interest, and attorney's fees. The petition alleged that after MAP2 dismissed its bankruptcy case, the Bank shut down communications and posted the property for foreclosure. MAP2 alleged causes of action for fraud in a real estate transaction and breach of contract and sought money damages. Although MAP2 also sought to enjoin the defendants from going forward with the intended foreclosure, it did not obtain that relief because the property was sold the next day to Eagle TX I SPE, LLC.

The Bank was served with the lawsuit six months later. After the Bank answered, the parties asked the court to approve an agreed scheduling order that provided certain deadlines in the case. The court approved the plan, which was signed by counsel for MAP2 and the Bank,

and set the following deadlines: (1) to join additional parties, February 2, 2012; (2) to file amended or supplemental pleadings, July 1, 2012; and (3) to close discovery, August 1, 2012. During the timelines provided in the scheduling order, MAP2 did not amend or supplement its pleadings. It served one set of document requests, but did not serve any interrogatories or requests for admissions nor did it notice or take any depositions. The Bank amended its answer to raise an affirmative defense, counterclaimed against MAP2 for the deficiency judgment, and filed a third-party claim against Mrs. Heath Kasnetz, who it alleged had guaranteed the loan.

After the deadlines passed to join parties and amend pleadings, the Bank filed a no-evidence motion for summary judgment on MAP2's pleaded claims for fraud in a real estate transaction and breach of contract. Before the motion was heard, however, the trial court abated the case so the probate court could consider whether to appoint a guardian for Mrs. Kasnetz, the MAP2 matriarch and director. The order stayed "[a]ll discovery and motion practice" until further order, although all deadlines fixed in the agreed scheduling order had by then passed.

Six months later, the trial court lifted the abatement and set the Bank's no-evidence motion for hearing. Thereafter, MAP2 filed a response to the motion, and the Bank filed a reply. Following a hearing, the trial court granted the Bank's motion on both claims, which resolved all of MAP2's affirmative claims against the Bank in the Bank's favor.

After this ruling, the Bank sought a traditional summary judgment on its own claim for a deficiency judgment. Seven days before the summary judgment hearing and ten months after the deadline set out in the agreed scheduling order, MAP2 filed its first amended petition, asserting numerous affirmative defenses (fraudulent inducement, equitable estoppel, promissory estoppel, waiver, and a "provision of the DTPA") and alleging new causes of action against the Bank for common law fraud and fraud by nondisclosure, negligent misrepresentation, and deceptive trade practices violations. In addition to money damages, within its DTPA claim, MAP2 alleged for

the first time that it was entitled to "orders necessary to restore to MAP2 its . . . property acquired in violation of the law[.]" Simultaneously with the filing of the amended pleading, MAP2 filed its response to the Bank's traditional motion for summary judgment raising its newly pleaded affirmative defenses.

Thirty-two months into the lawsuit and while the ruling on the Bank's summary judgment motion was pending, on August 29, 2013, MAP2 filed a notice of lis pendens on the Uptown Square property and sent notice to Eagle and Greenway, who had purchased the property from Eagle in April 2011. Greenway responded with a petition in intervention seeking to quiet title to the property and to have the lis pendens declared invalid. Greenway then filed a motion to expunge the lis pendens and a motion for summary judgment.

Following the Greenway intervention and without obtaining leave, on October 24, 2013, MAP2 filed a second amended petition adding new causes of action and two new parties—Eagle and Haynie Rake Repass Lowry, P.C., the Bank's law firm. The petition alleged primarily the same facts as those alleged in the original petition, but added allegations that Eagle was a "straw purchaser" at the foreclosure sale and that it is "fairly preposterous" that Greenway purchased the property without actual or constructive notice of the bankruptcy case and foreclosure sale. Although the petition named Greenway as a party, it did not allege any separate causes of action against it. MAP2 also attempted to reopen discovery, serving its request for disclosure with the second amended petition and then serving each party with more than 200 document requests. After amending its petition and serving new discovery, MAP2 filed a response to Greenway's summary judgment motion and requested time to conduct discovery.

Meanwhile, the Bank filed a motion to strike MAP2's amended petitions[1] and a motion for protection from the document requests. Both motions asserted the amendments and discovery violated the parties' agreed scheduling order. While these motions were pending, the trial court in separate rulings (1) granted the Bank summary judgment on its affirmative claims against MAP2 and (2) granted Greenway's motion for summary judgment and motion to expunge lis pendens. Two weeks later, the trial court struck MAP2's first and second amended petitions and granted the motions for protection. By striking the amended pleadings, the order disposed of all remaining parties and claims. MAP2 appealed.

## AMENDED PLEADINGS

In its first issue, MAP2 contends the trial court erred by striking its amended pleadings and disallowing already-served discovery "based solely on the expiration of deadlines set in a scheduling order entered long before the intervention." We begin with the amended pleadings.

The parties' agreed scheduling order set deadlines to join additional parties and to file amended and supplemental pleadings. Without seeking or obtaining leave of court, MAP2 filed its first amended petition ten months after the July 1, 2012 deadline and added new causes of action and affirmative defenses and sought, for the first time, the return of the property. MAP2 filed its second amended petition fourteen months after the deadline for doing so and again without seeking or obtaining leave of court. This petition added two additional parties and two new causes of action.

In its order granting the motion to strike both amended pleadings, the trial court found, among other things, that the petitions were filed outside the parties' agreed deadline for doing so. Further, the trial court found the defendants had not filed amended or supplemental pleadings,

---

[1] The motion initially sought to strike the second amended petition and was later supplemented to add the first amended petition. The motion was ultimately joined by the other parties, except Greenway.

nor disclosed new information in a discovery response or amended or supplemental discovery responses, which had either unfairly prejudiced MAP2 or would require or justify MAP2's untimely amendments.

A trial court has wide discretion to manage its docket and we will not interfere with the exercise of that discretion without a showing of clear abuse. *Bagwell v. Ridge at Alta Vista Investments I, LLC*, 440 S.W.3d 287, 292 (Tex. App.—Dallas 2014, pet. filed); *In re Estate of Henry*, 250 S.W.3d 518, 526 (Tex. App.—Dallas 2008, no pet.). We review a trial court's ruling on amended pleadings for abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex. 1980); *Strange v. HRsmart, Inc.*, 400 S.W.3d 125, 131 (Tex. App.—Dallas 2013, no pet.). Likewise, we review a trial court's enforcement of its scheduling order for an abuse of discretion. *Bagwell*, 440 S.W.3d at 292. An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding rules or principles. *Gunn v. Fuqua*, 397 S.W.3d 358, 377 (Tex. App.—Dallas 2013, pet. denied). When reviewing matters committed to the trial court's discretion, we may not set aside the trial court's ruling unless it is clear from the record that the trial court could reach only one decision. *NCS Mgmt. Corp. v. Sterling Collision Ctrs., Inc.*, 108 S.W.3d 534, 537 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Generally, a party may amend its pleadings up until seven days before trial unless the amended pleadings operate as a surprise to the opposing party. TEX. R. CIV. P. 63. That deadline may be altered by the trial court in a scheduling order issued under rule 166. TEX. R. CIV. P. 63; *Gunn*, 397 S.W.3d at 377. Rule 166 provides any such pleadings "shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party." TEX. R. CIV. P. 166. A trial court has no discretion to refuse the amendment unless (1) the opposing party presents evidence of surprise

or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *State Bar v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex. 1994); *Greenhalgh v. Serv. Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex. 1990); *Hakemy Bros., Ltd., v. State Bank & Trust Co.*, 189 S.W.3d 920, 924 (Tex. App.— Dallas 2006, pet. denied). An amendment is prejudicial on its face if (1) it asserts a new substantive matter that reshapes the nature of the trial itself rather than recasting assertions already made or adding new procedural issues; (2) the opposing party could not have anticipated the amendment in light of the development of the case up to the time the amendment was requested; and (3) the opposing party's presentation of its case would be detrimentally affected. *In re City of Dallas*, 445 S.W.3d 456, 464 (Tex. App.—Dallas 2014, orig. proceeding); *Bagwell*, 440 S.W.3d at 293; *Halmos v. Bombardier Aerospace Corp.,* 314 S.W.3d 606, 622 (Tex. App.— Dallas 2010, no pet.). When amendments that introduce new substantive matter have been refused by the trial court under rule 63, the burden of showing an abuse of discretion is on the complaining party, rather than on the opposite party to show surprise. *Hardin*, 597 S.W.2d at 349; *Gunn*, 397 S.W.3d at 377.

In its brief, MAP2 makes no attempt to analyze its complaint within the context of the law regarding agreed scheduling orders, amended pleadings, intervention, or a trial court's discretion to control its docket. Instead, it relies on cursory references, without any accompanying analysis, to procedural rules regarding compulsory counterclaims and cross claims, and asserts it was entitled as a "matter of right" to restart the case simply because Greenway intervened. Given the circumstances presented in this case, we cannot agree.

MAP2 never sought to amend the scheduling order nor did it seek to obtain leave to file amended pleadings. We also note MAP2 filed its first amended pleading adding new causes of action and affirmative defenses against the Bank before Greenway ever intervened, so to the

extent MAP2 suggests the intervention was the sole reason for late-filed pleadings, the record shows otherwise.

By the time MAP2 filed the first amended petition to assert a right to recover the property instead of just money damages, this case had been pending for twenty-nine months. During that time, the property had been sold at foreclosure and then resold to Greenway, all matters of record. Also during that time, MAP2 had engaged in almost no discovery, filed no amended or supplemental pleadings, added no new parties, and had lost the only affirmative claims it had against the Bank. When Greenway intervened in September 2013, it was only because MAP2 used that late-filed amended pleading to file a lis pendens on the property, forcing Greenway to act to quiet title.

MAP2 then used Greenway's intervention as an opportunity to file a second amended petition that added both Eagle and the Bank's law firm as new parties. By that time, all the facts relied on by MAP2 had existed for more than 2 1/2 years. MAP2 had sued the lawyers individually in the original petition and later nonsuited them, and Eagle had purchased the property at foreclosure in December 2010 and then sold it to Greenway four months later. Nothing about the intervention brought any new facts into this case.

The new claims and parties created new substantive matters and reshaped the nature of the case by, in particular, seeking recovery of the property. This change at the end of the lawsuit, particularly after all of MAP2's affirmative claims against the Bank had been disposed of, was not something the Bank could have anticipated. MAP2 does not rely on any "newly discovered evidence" to justify reopening the case nor does it provide any reason why the claims could not have been brought before discovery had closed or the other deadlines imposed in the agreed scheduling order had expired. To the extent MAP2 suggests it was confused because the abatement order stayed all discovery and motion practice and the order lifting abatement failed to

–8–

order a new schedule, we are unpersuaded. By the time the case was abated, all the relevant deadlines in the scheduling order had expired.

Having considered the circumstances of the case, we conclude MAP2 has not shown the trial court abused its discretion in striking the amended pleadings. *See Keys v. Litton Loan Servicing, L.P.*, No. 14-07-00809-CV, 2009 WL 4022178. at *9 (Tex. App.—Houston [14th Dist.] Nov. 24, 2009, no pet.) (mem. op.) (not unreasonable for trial court to "call a halt to ever-spiraling cycle of litigation" when plaintiff did not seek leave of court to file fifth amended petition after deadline expired and added new causes of action against new parties); *NCS Mgmt.*, 108 S.W.3d at 537 (concluding court did not abuse discretion by striking amendment when newly filed claims would have essentially taken case from "the 'finish line' back to the 'starting line,' requiring the parties and the trial court to initiate the lengthy process of discovery, pre-trial matters, and potentially a full trial").

For similar reasons, we conclude the trial court did not abuse its discretion by disallowing "already-served discovery." MAP2 served more than 200 document requests on all parties and made a request for disclosure in its second amended petition. In its order protecting the defendants from the late-served discovery, the trial court found the agreed scheduling order was entered on September 26, 2011; the order set the discovery cutoff at August 2, 2012; MAP2 served the complained-of discovery on October 28, 2013, over eighteen months after the deadline; and the defendants had not filed amended or supplemental pleadings nor disclosed new information in a discovery response or amended or supplemental discovery response that prevented MAP2 from having an adequate opportunity to conduct discovery related to new matters or that caused MAP2 any unfair prejudice as a result of not being able to conduct untimely discovery.

MAP2 does not address these findings; rather, it asserts it "promptly" filed discovery within thirty days of the intervention. Relying on Texas Rule of Civil Procedure 190.5, it argues "the law provides that upon intervention opposing parties are entitled to plead, and take discovery."

Rule 190.5 provides that the court "may modify a discovery control plan at any time and must do so when the interest of justice requires." The trial court must allow additional discovery related to new pleadings if (1) the pleadings were made after the deadline for completion of discovery and (2) the adverse party would be unfairly prejudiced without such additional discovery. *See* TEX. R. CIV. P. 190.5(a).

As before, we do not consider this rule in a vacuum; rather, we consider it within the context of the particular circumstances. MAP2 agreed to the discovery deadline and never asked to amend that deadline. MAP2 asserts it needs more discovery to respond to Greenway's action to quiet title, but the crux of its lawsuit is the Bank's conduct in foreclosing the note and selling the property, which it claims ultimately prevented Greenway from having good title. MAP2 had almost two years to conduct discovery regarding the Bank's conduct and the actual or constructive knowledge of any subsequent owners. As stated previously, before MAP2 attempted to reopen discovery, the trial court had granted the Bank summary judgment on both of MAP2's claims against it. While we agree the intervention was filed after discovery had closed, we cannot agree that MAP2 would be unfairly prejudiced without such additional discovery. Rather, the trial court could have determined MAP2 had an adequate time to conduct discovery in this case, and the intervention did not warrant reopening discovery. *Cf. Manautau v. Ebby Halliday Real Estate, Inc.*, No. 05-13-01035-CV, 2015 WL 870215, at *2 (Tex. App.—Dallas Feb. 27, 2015, no pet. h.) (mem. op.) (explaining that discovery period set by pretrial order generally provides adequate opportunity for discovery, in case where plaintiff complained

–10–

she needed more time for discovery after the appellees were converted from responsible third parties to defendants). We overrule the first issue.

CONTINUANCE TO CONDUCT DISCOVERY

In its second issue, MAP2 contends the trial court erred in denying its motion to continue the summary judgment hearing so that it could obtain discovery necessitated by Greenway's intervention. MAP2 requested the continuance in the body of its response to Greenway's motion for summary judgment and attached the affidavit of its counsel to support the request.

As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion, and the trial court (1) ruled on the request, objection, or motion, either expressly or implicitly, or (2) refused to rule, and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Gonerway v. Corrs. Corp. of Am.,* 442 S.W.3d 443, 446 (Tex. App.—Dallas 2013, no pet.). Here, while MAP2 filed its motion for continuance as part of its response to the motion for summary judgment, the record does not reflect that it called the motion to the trial court's attention or set it for hearing. *See Grace Interest, LLC v. Wallis State Bank*, 431 S.W.3d 110, 122 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); citing *Approximately $1,013.00 v. State*, No. 14-10-01255-CV, 2011 WL 5998318, at *2 (Tex. App.—Houston [14th Dist.] Dec. 1, 2011, no pet.) (mem. op.) ("Showing that a motion was filed with the court clerk does not constitute proof that the motion was brought to the trial court's attention or presented to the trial court with a request for a ruling."). The record here does not demonstrate the trial court either ruled on the motion or refused to rule on the motion and MAP2 objected to that refusal. We therefore conclude MAP2 has failed to preserve this issue for appellate review. *See Hightower v. Baylor Univ. Med. Ctr.*, 251 S.W.3d 218, 224 (Tex. App.—Dallas 2008, pet. stricken) (concluding party's failure to obtain ruling on motion to continue summary judgment hearing waived complaint); *Washington*

–11–

*v. Tyler Indep. Sch. Dist.*, 932 S.W.2d 686, 690 (Tex. App.—Tyler 1996, no writ) (concluding party's failure to obtain written ruling on motion to continue summary judgment hearing waived any error).

Even if we concluded the trial court impliedly denied the motion, MAP2 has not shown error. When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* When deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery, we consider the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id*. A party seeking more time to oppose a summary judgment motion must describe the evidence sought, explain its materiality, and show the diligence used to obtain the evidence. *Id.*

MAP2 asserts that it requested disclosures and documents within thirty days of the intervention and needed the discovery on the issue of Greenway's "actual or constructive notice of MAP2's claim to Uptown Square[.]" It asserts the requested discovery "sought the details of the sale to Greenway from all in the title chain after MAP2, plus those persons mentioned in its filings, together with sufficient fabric, both direct and circumstantial, to make the case for Greenway's knowledge of [the Bank's] fraud, and this lawsuit."

Although the intervention had been on file for only a brief period of time, this case had been pending for almost three years when MAP2 attempted to reopen discovery. All the facts that MAP2 was attempting to discover had existed, at the latest, since four months into this lawsuit when Greenway purchased the property. Nevertheless, over the course of the litigation,

MAP2 served one set of document requests. It never served a request for disclosure, interrogatories, or requests for admission, nor did it notice or take any depositions. Moreover, it did not timely amend its pleadings to add any causes of action to recover the property or to add Eagle or Greenway as parties, even though it was no secret that both had been in the "title chain" (given the public records) and Greenway would have been a necessary and indispensable party to any recovery of the property. Although it alleges it needs information about when and what Greenway knew with respect to the Bank's "fraud," we note MAP2 did not timely plead any common law fraud claims against the Bank[2] nor did it plead any cause of action related to the foreclosure sale that would allow it to "undo" the sale. Given the length of time this case has been on file, MAP2's lack of diligence, and the questionable materiality of the information sought, we cannot conclude the trial court abused its discretion by denying the continuance. We overrule the second issue.

SUMMARY JUDGMENTS

In issues three, four, and five, MAP2 argues the trial court erred in granting summary judgments on Greenway's claim to quiet title to the property, on the Bank's breach of contract claim for a deficiency judgment, and against it on its own affirmative claims against the Bank. We address each in turn.

We review the granting of a motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). A party moving for a traditional summary judgment must establish that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant's motion and evidence

---

[2] MAP2 did plead a statutory fraud claim, which was disposed of by summary judgment, and MAP2 has not challenged that particular ruling on appeal.

facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine issue of material fact sufficient to defeat the summary judgment. *Jensen v. Southwest Rodeo, L.P.*, 350 S.W.3d 755, 757 (Tex. App.—Dallas 2011, no pet.). When reviewing a motion for summary judgment, the court takes the nonmovant's evidence as true, indulges every reasonable inference in favor of the nonmovant, and resolves all doubts in the nonmovant's favor. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

A no-evidence summary judgment is reviewed under the same legal sufficiency standard as a directed verdict. *Merriman,* 407 S.W.3d at 248. Under that standard, we consider the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id*. The nonmovant has the burden to produce summary judgment evidence raising a genuine issue of material fact as to each challenged element of his cause of action. TEX. R. APP. P. 166a(i). A no evidence challenge will be sustained when

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*Merriman*, 407 S.W.3d at 248 (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

In its third issue, MAP2 argues the trial court erred in granting Greenway's motion for summary judgment on its claim to quiet title. To prevail in a suit to quiet title, a claimant must prove (1) it has an interest in a specific property, (2) title to the property is affected by a claim of the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied).

Greenway's summary judgment motion asserted it was a bona fide purchaser of the property and purchased the property in April 2011 from Eagle. It asserted that at the time it purchased the property, it had no knowledge of the lawsuit, no lis pendens had been filed, and MAP2 had made no claim for possession or title to the property, instead seeking only money damages. Then, more than two years later, MAP2 amended its pleadings to make a claim to "restore" the property under the DTPA and filed a lis pendens. Greenway asserted both claims were invalid, arguing MAP2 had not alleged a real property claim, the transaction could not be unwound because it has been sold twice, and the trial court had already granted the Bank's summary judgment on MAP2's breach of contract claim. The motion was supported by (1) the substitute trustee's deed showing the sale of the property at foreclosure to Eagle for $2.7 million; the special warranty deed conveying the property from Eagle to Greenway; and the affidavit of Todd Petty, the co-manager of Boll GP, LLC, the general partner of Greenway Boll.

In his affidavit, Petty asserted he was in charge of and involved with Greenway's purchase of the property. He testified Eagle conveyed the property to Greenway on April 4, 2011, and the deed was recorded the following day. Petty stated Greenway paid consideration of $2.7 million to purchase the property and was still the owner of the property. Finally, Petty attested that at the time of the purchase, neither he nor anyone else at either Greenway or Boll GP, LLC had any knowledge of "this lawsuit or any knowledge of any claims for ownership or for any interest" in the property by MAP2.

On appeal, MAP2 argues Greenway failed to establish as a matter of law its status as a bona fide purchaser because Petty's testimony lacked personal knowledge and was hearsay, and even setting aside those objections, MAP2 raised a fact issue on actual knowledge.

To qualify as a bona fide purchaser, a party must acquire property in good faith, for value, and without notice of any third-party claim or interest." *Madison v. Gordon*, 39 S.W.3d

–15–

604, 606 (Tex. 2001) (per curiam). Status as a bona fide purchaser is an affirmative defense to a title dispute. *Id.* Notice may be constructive or actual. *Id.* Actual notice rests on personal information or knowledge. *Id.* Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Id.*

We begin with MAP2's objections to Petty's affidavit. Objections to the form of summary judgment are preserved for appellate review only if such objections are made and ruled on in the trial court. *Bastida v. Aznaran*, 444 S.W.3d 98, 104 (Tex. App.—Dallas 2014, no pet.). A defect in the substance of the affidavit is not waived by failure to obtain a ruling from the trial court and may be raised for the first time on appeal. *Id.*

An objection that an affidavit contains hearsay is a defect in form. *Id.* Here, the record does not contain any ruling on MAP2's hearsay objection. By failing to obtain a ruling from the trial court, MAP2 has waived this objection on appeal. *See id.*

MAP2 also did not obtain a ruling on its "lack of personal knowledge" complaint. Whether a complaint about lack of personal knowledge is a defect of form or substance is not as clear. *Compare S & I Mgmt., Inc. v. Choi*, 331 S.W.3d 849, 855 (Tex. App.—Dallas 2011, no pet.) (concluding such a complaint concerns a defect in form) with *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 375 (Tex. App.—Dallas 2011, no pet.) (concluding such a complaint is a defect in substance). But assuming MAP2's complaint involved a substantive defect, Petty's affidavit established the basis for his personal knowledge. In particular, he testified to his position as co-manager of the general partner and stated he was in charge of and personally involved in Greenway's purchase of the property. Given the circumstances of this case, this was sufficient to establish the basis for his statement regarding his knowledge.

Finally, MAP2 contends Petty's statement was conclusory. Objections that statements in an affidavit are conclusory assert defects in substance, which can be raised for the first time on

–16–

appeal.  *S & I Mgmt., Inc.*, 331 S.W.3d at 855.  A conclusory statement is one that does not provide the underlying facts to support the conclusion.  *Id.*  It may be either legal or factual in nature.  *Id.*

Petty's affidavit showed he was the co-manager of Greenway's general partner and was in charge of and involved with the purchase of the property at issue.  After setting out how Greenway became the owner of the property, Petty stated that at the time of the purchase, he did not have knowledge of this lawsuit or any claims for ownership or for any interest in the property by MAP2.  Petty did not testify to the conclusion that Greenway was a bona fide purchaser; rather, he testified about what he knew with respect to one of the *facts* needed to establish bona fide purchaser status.  His role in the purchase of the property made him uniquely qualified to testify about such matters.

Having concluded Petty's affidavit was not conclusory, we next address MAP2's argument that it raised a fact issue on Greenway's knowledge.  As evidence, it directs us to a portion of the affidavit of Andrew Kasnetz, who it contends is "an expert on Uptown real estate, its values, its market, and its information dynamics."  MAP2 directs us to Kasnetz's affidavit testimony in which he stated the Dallas Business Journal published a front-page article about the "bankruptcy of certain Kasnetz entities, including MAP2" on June 21, 2009.  Soon after, according to Kasnetz, Greenway "began inquiring about purchasing some of the protected properties, including Uptown Square."  Kasnetz stated he "received this information within the bankruptcy while we were in work-out negotiations with Colonial Bank, which was soon after taken over by [the Bank].  So there is no question that Greenway was interested in and made overtures to acquire Uptown Square and knew about its legal proceedings."

Whether Greenway knew that MAP2 had been involved in bankruptcy proceedings is a different question than whether it knew MAP2 had filed this particular lawsuit or had any

–17–

interest or claim in the property. Without further explanation or analysis, MAP2 nevertheless asserts that it was "sufficient" to put Greenway to a "duty of inquiry." Any such duty of inquiry, however, extends "only to matters that are fairly suggested by the facts really known." *Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 631 (Tex. 1950). MAP2 essentially asserts that Greenway was aware that Uptown Square was part of a bankruptcy proceeding because (1) an article ran in a business journal about the bankruptcy of MAP2 and (2) shortly thereafter, Greenway inquired about purchasing the property. But there is no evidence to show Greenway was aware of the article, much less read it. And while MAP2 is entitled to reasonable inferences from the evidence, it cannot create a fact issue based on mere speculation. Moreover, had Greenway inquired into this lawsuit at the time it purchased the property from Eagle, it would discovered a claim for money damages, not a claim for the property. Because we conclude Greenway established as a matter of law bona fide purchaser status, and MAP2 failed to raise a fact issue, the trial court did not err in granting summary judgment on Greenway's quiet title claim. We therefore overrule the third issue.

In its fourth issue, MAP2 argues the trial court erred in granting the Bank's traditional motion for summary judgment on the Bank's note claim because it presented sufficient evidence to raise a fact issue as to each element of its affirmative defenses. Eighteen days after the trial court granted the summary judgment, it struck MAP2's amended pleadings raising the affirmative defenses. Because we have concluded the trial court did not err in striking the amended pleadings, there are no affirmative defenses for us to consider. The fourth issue is without merit.

–18–

In its fifth issue, MAP2 contends it met its burden to defeat the Bank's no-evidence motion for summary judgment on its breach of contract claim.[3] The elements of a breach of contract claim are (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 214 (Tex. App.—Dallas 2005, no pet.).

In its original petition, MAP2 alleged that it had an agreement with the Bank to restructure the loan that was secured by the Uptown Square property. The terms were that MAP2 would pay off and bring current all outstanding tax obligations, would repay all accrued and unpaid interest at the contract rate, would pay the Bank's attorney's fees, and would dismiss the bankruptcy case with prejudice for one year, and the Bank would give MAP2 a 5.35% per annum replacement loan with a thirty-year amortization with a two-year balloon.

In its brief, MAP2 asserts the trial court erred in granting the summary judgment because it produced evidence on every element of its claim. With respect to performance, MAP2 contends it produced evidence that it dismissed its bankruptcy and paid the money promised under the agreement. We have reviewed that portion of the record cited to us by MAP2, and while it shows MAP2 did indeed dismiss the bankruptcy, the summary judgment evidence fails to show that MAP2 paid and brought current its outstanding tax obligations or paid all accrued and unpaid interest. Without evidence it paid this money, MAP2 failed to raise a fact issue on the necessary element of performance. We conclude the trial court did not err in granting the Bank's summary judgment. The fifth issue is without merit.

---

[3] MAP2 has not challenged the trial court's summary judgment on its claim for fraud in a real estate transaction.

We affirm the trial court's judgment.

140206F.P05

/Molly Francis/

MOLLY FRANCIS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MCKINNEY AVENUE PROPERTIES NO. 2, LTD., Appellant

No. 05-14-00206-CV      V.

BRANCH BANK AND TRUST COMPANY, EAGLE TX I SPE, LLC, HAYNIE RAKE REPASS & LAWRY, P.C., AND GREENWAY-BOLL STREET, L.P., Appellees

On Appeal from the County Court at Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-10-08500-B.
Opinion delivered by Justice Francis; Justices Lang-Miers and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees BRANCH BANK AND TRUST COMPANY, EAGLE TX I SPE, LLC, HAYNIE RAKE REPASS & LAWRY, P.C., AND GREENWAY-BOLL STREET, L.P., recover their costs of this appeal from appellant MCKINNEY AVENUE PROPERTIES NO. 2, LTD.

Judgment entered June 5, 2015.