

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00067-CV

---

**ROBERT ANDREW SHAW, CARL KIRK HASTINGS, PONDEROSA PETROLEUM, INC., AND WFS ASSET MANAGEMENT, LTD., APPELLANTS**

V.

**AMERICAN BANK OF COMMERCE, APPELLEE**

---

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2020-540,878, Honorable J. Phillip Hays, Presiding

---

April 13, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Here, American Bank of Commerce (ABC) amended its petition four times.  It did so twice after the lapse of the trial court's deadline mentioned in the scheduling order.  The trial court approved the last effort on December 29, 2021.  WFS Asset Management, Ltd., sought leave to amend its original answer about a week later.  The trial court denied the latter.  Thereafter, it granted ABC's amended motion for summary judgment, which also happened to have been filed after the deadline for dispositive motions.  That led to

the entry of a modified final summary judgment awarding ABC recovery of a deficiency against WFS, Robert Andrew Shaw, Carl Kirk Hastings, and Ponderosa Petroleum, Inc. (referred to collectively as WFS). The two issues before us involve the denial of leave to amend and ABC's entitlement to summary judgment as a matter of law. We reverse and remand the cause for further proceedings.

### Background

This appeal arose from effort by ABC to recover a deficiency against WFS arising from the latter's default on a $216,000 loan secured by realty. After various attempts, ABC ultimately bought the realty at foreclosure, paying $200,000. Its own appraisals valued the property as high as $275,000. Thereafter, the bank sued to recover the deficiency, which allegedly approximated $190,000. The sum included numerous components, such as principal, interest, appraisal costs, taxes, asbestos inspection fees, and attorney's fees.

Upon entertaining ABC's amended motion for summary judgment and WFS's response thereto, the trial court signed its modified final summary judgment favoring the bank. Through the decree, it awarded ABC against WFS and Ponderosa "the principal sum of $135,554.09, plus $20,716.97 as pre-judgment interest, plus $21,801.97 as reasonable attorney's fees, for a total of $178,073.03 . . . ." Against Shaw and Hastings, the bank was awarded "$139,879.09, plus $21,579.81 as pre-judgment interest, plus $21,801.97 as reasonable attorney's fees, for a total of $183,260.87 . . . ."

### Analysis

We begin by addressing issue two, given its dispositive nature. Through it, WFS contends that "[t]he trial court erred in granting a summary judgment because there were

2

genuine issues of material fact relating to the deficiency calculation and reasonable and necessary attorney's fees." We agree.

Regarding the matter of attorney's fees, material issues of fact purportedly exist because ABC failed to prove their reasonableness and necessity per the formula mandated in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2018). Commendably, ABC acknowledged both in its appellee's brief and during oral argument that its evidence failed to comport with the *Rohrmoos* methodology. Yet, it believed the matter was waived because WFS did not object below.

The burden lay with ABC to prove its attorney's fees. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020) (stating that the party seeking attorney's fees has the burden of proof). Furthermore, no one questions that *Rohrmoos* controls the mode of calculating attorney's fees at bar. The fact finder's starting point consists of "determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Rohrmoos*, 578 S.W.3d at 498; *accord, Yowell*, 620 S.W.3d at 354 (requiring the party seeking fees to "supply enough facts to support the reasonableness of the amount awarded"). "Sufficient evidence includes, ***at a minimum***, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos*, 578 S.W.3d at 498 (emphasis added).

Here, the bank attempted to establish its reasonable and necessary attorney's fees through the affidavit of legal counsel. The latter provided a five-page document

3

describing a myriad of services provided to ABC. Yet, missing were the identity of the individuals performing the services, a description of the time required to perform them, and a description of a reasonable hourly rate charged for each person who completed the tasks. Thus, three of the five components which, "at a minimum," constitute sufficient evidence went undeveloped. Consequently, ABC failed to carry its burden to prove, as a matter of law, the reasonableness and necessity of the fees awarded by the trial court. In other words, its summary judgment proof was insufficient to establish the fees claimed and awarded. *See Cossio v. Delgado*, No. 01-17-00704-CV, 2018 Tex. App. LEXIS 4828, at *8-10 (Tex. App.—Houston [1st Dist.] June 28, 2018, no pet.) (mem. op.) (concluding that though the attorney's affidavit may be some evidence of attorney's fees, it failed to establish entitlement to them as a matter of law because it omitted two of the categories of information required by *Rohrmoos*, namely the tasks performed and the time spent on them).

That WFS may have waited until appeal to complain of the default matters not. This is so because a nonmovant in a traditional summary judgment setting "need not respond to the motion to contend on appeal that the movant's summary judgment proof is insufficient as a matter of law to support summary judgment." *M. D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000)*; Cossio*, 2018 Tex. App. LEXIS 4828, at *6. So, the failure to provide sufficient evidence establishing one's entitlement to attorney's fees may be raised for the first time on appeal. Given this, we must reverse the trial court's award of attorney's fees.

The need to reverse the award of attorney's fees obligates us to also reverse the damages awarded ABC. This is so because those damages likewise included at least

4

$48,000 in attorney's fees sought by the bank. The latter used the same mode of calculating them as it did the fees awarded in addition to the damages. That is, ABC attempted to prove it incurred about $70,000 in attorney's fees using one affidavit. We alluded to that affidavit earlier and found it deficient. About $48,000 of the $70,000 in fees were awarded as damages resulting from WFS's default. The remaining $21,801.97 were awarded as attorney's fees. So, the same defect pretermitting the recovery of the $21,801.97 also permeates the $48,000 award. That means ABC also failed to provide sufficient evidence supporting the damages it recovered.

We sustain WFS's second issue. That leaves issue one. Under it, WFS contends that the trial court abused its discretion in refusing to allow an amendment of its answer. Through that amendment, it sought to allege that ABC "knowingly submitted an insufficient credit bid at the foreclosure sale not a fair market value for the property which substantially contributed to the alleged deficiency balance." This was followed by a request for the trial court "to determine a fair market value of the real property subject to this suit" pursuant to section 51.003(b) of the Texas Property Code. We sustain the issue.

The standard of review is abused discretion. *Triex Tex. Holdings, LLC v. Marcus & Millichap Real Estate Inv. Servs. of Nev.*, No. 07-18-00077-CV, 2019 Tex. App. LEXIS 3365, at*5 (Tex. App.—Amarillo April 25, 2019, no pet.) (mem. op.). Thus, the decision must fall within the zone of reasonableness and comport with the law. *Knorpp v. Cit Group/Consumer Fin., Inc.*, No. 07-19-00177-CV, 2020 Tex. App. LEXIS 6090, at *3-4 (Tex. App.—Amarillo Aug. 3, 2020, no pet.) (mem. op.). Whether it does is influenced by both legal authority relating to the amendment of pleadings and the circumstances of the case. Regarding the former, courts begin with the proposition that parties may freely

5

amend their pleadings. *Triex Tex. Holdings, LLC,* 2019 Tex. App. LEXIS 3365, at *5. That freedom grows less expansive in certain situations. For instance, a litigant "must obtain leave from the trial court to file an amended pleading within seven days of trial, including a summary judgment proceeding, or after the deadline set by the trial court." *Id.* Yet, even then, leave must be granted unless an opposing party shows that same will operate as a surprise to the opposite party. *Id.* (quoting TEX. R. CIV. P. 63). Indeed, a trial court lacks discretion to refuse amendment unless the nonmovant presents evidence of surprise or prejudice on its face. *Id.* And, the latter occurs when, in the context of the record, the amendment "(1) asserts a new substantive matter that reshapes the nature of the case, (2) could not have been anticipated by the opposing party, *and* (3) prejudices the presentation of the opposing party's case." *Id.* (Emphasis added). If nothing else, these factors illustrate a bias favoring leave to amend, which bias the opponent must overcome. That said, we turn to the case at hand.

WFS wanted to interject an issue regarding the fair market value of the realty into the discussion. Doing so could affect the deficiency recoverable by ABC. *See* TEX. PROP. CODE ANN. § 51.001(c) (stating that if fair market value is greater than the sale price at foreclosure sale, the debtors are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any obligation that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price). Authority likens such an offset to an affirmative defense, thereby necessitating its affirmative averment. *See PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 557 (Tex. 2015) (so stating).

6

No doubt, WFS's attempt to interject the topic raised a new issue, but it did not *substantively* "reshape the nature of the case." Simply put, the case remained the same. It was no more or less a dispute about the collection of a secured debt and the deficiency recoverable after foreclosure. That the ultimate question remained the amount of deficiency served as ABC's own justification for seeking and receiving leave to belatedly file an amended petition. As its counsel said at the hearing, "[a]ll they [the amended pleadings] did was change the amount of the deficiency by a few thousand dollars." WFS merely wanted to "change the amount of the deficiency" by thousands of dollars too. Doing so implicated another step, i.e., the determination of fair market value. But ABC did not show that completion of the step involved substantive effort or deviation from crux of the suit, i.e., the amount of the deficiency.

Also of note is ABC's own pleading. Therein, it alleged that it arrived at the sum due "[a]fter deducting all credits and *offsets* to which said Defendants are entitled . . . ." (Emphasis added). If nothing else, this suggests that "offsets" and their consideration were deemed by ABC as components of the deficiency long before WFS wanted to perfect its demand for an omitted offset via an amended answer and an affirmative pleading.

Could ABC have anticipated the invocation of section 51.003 . . . we say yes. First, an amended pleading affecting only the amount of damages does not automatically equate surprise. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex. 1990). Second, ABC possessed the very evidence placing the issue in play. That evidence consisted of two appraisals evincing a fair market value of the property exceeding ABC's foreclosure bid of $200,000. One depicted a fair market value of

7

$255,000 and the other, $275,000. Thus, both suggest it acquired the realty at a sum potentially far below its market value. Moreover, ABC apparently commissioned those appraisals. So too were they in its possession. Undoubtedly, it knew of its bid. One can reasonably infer that it also knew of the appraisals it commissioned and how the bid underpriced the market value of the property as reflected in its own appraisals. That coupled with ABC being an entity engaged in the business of loans and presumably knowing the law, *see Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n.3 (Tex. 1990) (acknowledging that all persons are presumed to know the law), we find it strained analysis to conclude that section 51.003 and its potential impact could not be anticipated by ABC. *See Rodriguez v. Crowell*, 319 S.W.3d 751, 759 (Tex. App.—El Paso 2009, pet. denied) (stating that the question is not whether the opposing party did in fact anticipate it, but rather whether it could have anticipated it). Indeed, when opposing the motion, counsel for ABC argued that "all deficiency actions [were] governed by [51.003]". All deficiency actions being so governed hardly supports the notion that a business regularly engaged in those actions could not anticipate the application of a part of that very statute. This seems especially so when its own bid came in far less than what it knew to be the appraised value.

As for prejudicing ABC's case, its argument below was two-fold. First, it proposed that leave to amend would substantially change the nature of the case. We addressed and rejected that above. Next, it alleged that WFS should have acted sooner. That argument, however, deviates from the test. We listed the pertinent factors of the equation above. None is whether one seeking leave could have done so earlier. Rather, they concern the detrimental impact, if any, on the disposition of the case and on the opponent.

8

To the foregoing we add that little of record reflected the need for an appreciable delay in the proceedings, if leave were granted.  Again, ABC already had possession of the very evidence underlying WFS's section 51.003 request and desire for opportunity to amend.  And, it said nothing about the quantum of time, if any, needed to gather additional evidence, if any, on the topic.  Nor did WFS argue that more evidence or time to gather it was needed.

Also, disposition of the suit had already been delayed by ABC's own actions.  It sought (and received) leave to amend its pleadings and motion for summary judgment after the lapse of applicable pretrial deadlines.  Receiving such leave about a week before the scheduled summary judgment hearing caused the latter to be postponed.  *See* TEX. R. CIV. P. 166a(c) (requiring a response to a motion for summary judgment to be filed at least seven days before the hearing).  And, we cannot ignore that the leave received by ABC was for the purpose of allowing it to enhance the deficiency.  WFS sought the opportunity to decrease it.  We know of no authority holding that leave to amend should be more forthcoming when one seeks to enhance recovery as opposed to reduce it.  Nor did ABC cite us to any such authority.

Much was said by ABC about *Bagwell v. Ridge at Alta Vista Invs. I, LLC*, 440 S.W.3d 287 (Tex. App.—Dallas 2014, pet. denied).  It too involved review of a denied request to amend a pleading and interject a section 51.003(b) and (c) request.  Missing there, yet present here, was evidence of the party opposing amendment having itself sought and obtained leave to amend its own pleadings after applicable deadlines lapsed and mere days before the scheduled summary judgment hearing.

Missing there, yet present here, was evidence of minimal need for discovery upon the topic of fair market value. The appellee in *Bagwell* voiced to the trial court its need for an expert witness on the subject. ABC voiced no similar need here. *Id.* at 293-94. Rather, it already had engaged such a witness when it commissioned the two appraisals previously mentioned. It already had the evidence which a court could consider in assigning a fair market value to the property.

Missing there, yet present here, was the debtor moving swiftly to amend its pleading and interject the section 51.003(b) and (c) matter after the creditor last amended its pleading. As observed by the *Bagwell* majority, "appellants' argument still ignores the fact that appellants waited five months to add a section 51.003 affirmative defense after appellee filed its revised pleading. This case does not present a situation where appellee amended its pleading and appellants sought to respond with an amended pleading of their own shortly thereafter." *Id.* at 296. Our case actually does present "a situation where appellee amended its pleading and appellants sought to respond with an amended pleading of their own shortly thereafter." WFS acted on the heels of ABC's amending its live pleading for the fourth time. In short, pivotal circumstances differ between the cause at hand and *Bagwell*. Thus, we find it distinguishable and inapposite.

No doubt, a trial court has a legitimate interest in expeditiously disposing of matters before it. And, reasonable discretion must be afforded it when pursuing that end. Yet, it does not have the discretion to deny amendment when the opponent failed to prove surprise or prejudice. ABC failed to do so here. Instead, it succeeded in obtaining leave to press its own belated efforts to increase the purported deficiency due it. "Taint fair" and "what's good for the goose is good for the gander" are not maxims of law, though

10

many have alluded to them in opinion and word. Luckily here, we have more to rely on than those sayings. Upon comparing the circumstances of record to the criteria iterated in *Triex*, we conclude that the trial court abused its discretion in denying WFS leave to amend.

Having sustained the second issue, we reverse the modified summary judgment and remand the cause for further proceedings. TEX. R. APP. P. 44.1(b); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (stating that a general denial requires remand on both damages and liability when the judgment is reversed); *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 545-46 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (same though involving a summary judgment).


Brian Quinn
Chief Justice